Argued and submitted July 3, affirmed October 2, 2007

DEPARTMENT OF LAND CONSERVATION
AND DEVELOPMENT,
*Petitioner,*

*v.*

KLAMATH COUNTY,
Thomas Ankeny
and Lewis Ankeny,
*Respondents.*

Land Use Board of Appeals
2007009; A135614

168 P3d 1241

Richard M. Whitman, Attorney-In-Charge, Natural Resources Section, argued the cause for petitioner. With him on the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Denise G. Fjordbeck, Senior Assistant Attorney General.

Reginald R. Davis, Klamath County Counsel, argued the cause and filed the brief for respondent Klamath County.

Michael L. Spencer argued the cause and filed the brief for respondents Thomas Ankeny and Lewis Ankeny.

Before Landau, Presiding Judge, and Brewer, Chief Judge,* and Schuman, Judge.

LANDAU, P. J.

---

* Brewer, C. J., *vice* Ortega, J.

## LANDAU, P. J.

At issue in this case is whether the Land Use Board of Appeals (LUBA) has jurisdiction to review an ordinance adopted by a local government that modifies existing zoning ordinances in response to a claim filed under the statute adopted by initiative and known as "Measure 37." ORS 197.352. LUBA concluded that it does not have jurisdiction. We agree and affirm.

We begin with a brief explanation of the relevant statutes to provide context for an examination of the facts and contentions of the parties. Measure 37 was adopted by the voters in 2004. It provides that a public entity that has enacted or is enforcing a "land use regulation" that was adopted before December 2, 2004, and that "has the effect of reducing the fair market value" of privately owned real property may be required to pay the owner of the property "just compensation." ORS 197.352(1). The law includes provisions setting out the process by which the owners of such property may file claims for compensation. ORS 197.352(4) - (7). The law further provides that, "in lieu of payment of just compensation," the public entity "may modify, remove, or not * * * apply the land use regulation or land use regulations to allow the owner to use the property for a use permitted at the time the owner acquired the property." ORS 197.352(8). And the law provides that "[a] decision by a governing body *under this section* shall *not* be considered a land use decision as defined in ORS 197.015([11])."[1] ORS 197.352(9) (emphasis added).

The latter provision is the one at issue in this case. LUBA ordinarily has exclusive jurisdiction to review a "land use decision." ORS 197.825(1). The term "land use decision" is defined by statute to include final local government decisions that adopt, amend, or apply comprehensive plans or land use regulations. ORS 197.015(11). Measure 37 thus provides a qualification to LUBA's jurisdiction: A final decision of a local government that otherwise would constitute a "land use decision" that is subject to LUBA's exclusive jurisdiction

---

[1] The text of the statute, as codified, actually refers to the term "land use decision" as defined in "ORS 197.015(10)." The definition of "land use decision," formerly found in ORS 197.015(10), is currently codified in ORS 197.015(11).

is not regarded as a "land use decision" if that decision was rendered "under this section," that is, under Measure 37. With that context in mind, we turn to the undisputed facts of this case.

In 1951, Thomas and Lewis Ankeny acquired an 80-acre parcel of property in an unincorporated area of Klamath County. Some time after their acquisition of the property, it was placed in a "Forest/Range (FR)" zone. As we understand it, that designation applied to lands that have no forest productivity rating or are predominantly rated as Class VII forestlands, may be significant wildlife habitat, and are areas of mixed federal Bureau of Land Management and private ownership.

The Ankenys would like to develop their property. Specifically, they would like to divide the 80-acre parcel into one-acre parcels and build a dwelling on each parcel. That development is not permitted under the property's FR zone designation. On September 6, 2005, the Ankenys filed claims for compensation under Measure 37 for the reduction in fair market value of their property resulting from local and state land use regulations. They filed a claim with Klamath County, alleging that the county's land use regulations prohibited the desired development. They filed a separate claim with the state, alleging that various state statutes, statewide planning goals, and administrative rules likewise prohibited the development.

On July 18, 2006, the county determined that, in lieu of compensation for the effect of the applicable local land use regulations on the Ankenys' property, it would elect not to apply those laws to the property. The decision was reflected in an order adopted on that date.

Two days later, the Department of Land Conservation and Development (DLCD) issued its own order in response to the Ankenys' Measure 37 claim. The DLCD order provided that, in lieu of compensation, the state would not apply certain statutes, statewide planning goals, and administrative rules that otherwise would not permit the development that the Ankenys had proposed.

On November 7, 2006, the county adopted an order amending its July 18, 2006, order. That amended order was intended to "ensure that the Claimant is afforded full lawful relief" under Measure 37, by ordering that the current zone be changed from FR to "Suburban Residential (RS)." Specifically, the amended order provides:

"NOW, THEREFORE, IT IS HEREBY ORDERED that the Order approving Claimant's Measure 37 claim dated July 18, 2006, is amended to express the intent of the Board of County Commissioners and to further Order as follows:

"1. The Comprehensive Plan and Zoning maps of Klamath County shall be modified pursuant to ORS 197.352(8) and (9), to provide for a zoning of Suburban Residential (RS) to the subject property.

"2. Notice shall be published on or before November 14, 2006 * * * as required by Oregon law for the adoption of an ordinance by the County with the first public hearing being set for November 21, 2006 * * * and a second public hearing being set for December 12, 2006 * * *."

(Boldface omitted.)

In accordance with the amended order, the county then proposed a new ordinance, referred to by LUBA as "Ordinance 45-62(M37)." The proposed ordinance actually amended the county's existing zoning ordinances, comprehensive plan map, and zoning map so that the Ankenys' 80-acre parcel is zoned RS. After public hearings on the proposed ordinance, the county adopted it, on December 19, 2006. The text of Ordinance 45-62(M37), in part, is as follows:

"WHEREAS, in accordance with the [Board of County Commissioners'] Order in M37 48-05 dated November 7, 2006, County staff were directed to initiate the process to adopt an Ordinance to modify the Klamath County Comprehensive Plan Map and Land Use Zoning Map to reflect that the subject property be zoned for Suburban Residential use (RS); and

"WHEREAS, ORS 197.352(8) allows a local government to remove or to modify land use regulations; * * *

"* * * * *

"NOW, THEREFORE, the Klamath County Board of Commissioners ordains that the property * * * consisting of approximately 80 acres * * * is to be zoned Suburban Residential (RS), as described in KCLDC Article 51.3; that the Klamath County Comprehensive Plan Map is hereby amended accordingly; that the official zoning map designation for the subject property shall be changed accordingly."

(Boldface omitted.)

On January 8, 2007, DLCD appealed Ordinance 45-62(M37) to LUBA. The Ankenys intervened and then moved to dismiss the appeal on the ground that the county's approval of Ordinance 45-62(M37) was a decision made "under" Measure 37 and therefore not subject to LUBA's review jurisdiction. DLCD responded that Ordinance 45-62(M37) was not a decision made under Measure 37. According to DLCD, the county's decision *whether* to modify a land use regulation must be distinguished from a decision that actually modifies the land use regulation. The former, DLCD asserted, is a decision under Measure 37 and is not subject to LUBA review. The latter, DLCD insisted, is not.

■ LUBA concluded that, under ORS 197.352(2), it lacks jurisdiction to review Ordinance 45-62(M37). LUBA explained that

"* * * Ordinance 45-62(M37) is the county decision to 'modify,' rather than 'not * * * apply,' the FR planning and zoning designation that formed the local basis for intervenors' Measure 37 claim. Until Ordinance 45-62(M37) was adopted, the FR plan and zoning designation remained in place on the subject property, although the county had decided in its July 18, 2006 Order 'not to apply' the FR planning and zoning to intervenors. The November 7, 2006 Amended Order was at best a decision to proceed to adopt an ordinance in the future that would 'modify' the FR planning and zoning. Ordinance 45-62(M37) is the only county decision that purports to 'modify' the FR designation."

DLCD seeks judicial review of LUBA's decision. On review, it argues that LUBA erred in "conflating" what DLCD asserts are two separate and distinct local government actions—that is, deciding whether to modify a land use regulation in response to a Measure 37 claim and actually modifying the regulation itself. Only the former decision,

DLCD contends, is one that is made "under" Measure 37 and is, as a result, not subject to LUBA's review jurisdiction. According to DLCD,

"[t]he authorization to 'modify, remove, or not * * * apply' the land use regulation in ORS 197.352(8), when placed in the context of existing regulatory laws, contemplates a two-step process if government elects to provide relief by a means other than compensation. The first step is a determination of whether the owner is entitled to relief and, if so, what form of relief the public entity will provide—compensation or a 'waiver' (a decision to 'modify, remove[,] or not * * * apply' one or more land use regulations to allow the present owner to carry out a use of the property permitted when he acquired the property). The second step, in cases where the public entity has elected to 'waive' one or more land use regulations, is taken in response to a permit or zone change application, at which time the public entity will 'not * * * apply' one or more land use regulations to approve a permit allowing the owner's desired use, or 'modify' or 'remove' one or more land use regulations by amending the comprehensive plan or zoning designation (or text) to allow the present owner's use of the property, or both."

(Footnote omitted.) The Ankenys and the county respond that DLCD's argument suffers from a fatal flaw in that, as LUBA concluded, the proposed two-step process cannot be reconciled with the wording of the statute itself, which says nothing of the sort.

The parties' dispute is thus one of statutory construction, which we resolve by application of the familiar rules of statutory construction articulated in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We attempt to determine the meaning of the statute intended by those who enacted it—in this case, the voters who adopted it by initiative—by examining the text in context and, if necessary, relevant enactment history and other aids to construction. *Id.*; *see also Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 559-60, 871 P2d 106 (1994) (the same rules apply to the construction of statutes enacted by initiative). In examining the text of the statute in context, we assume that the people who enacted it intended that its words carry their plain, ordinary meanings. *PGE*, 317 Or at 611 ("[W]ords of common usage

typically should be given their plain, natural, and ordinary meaning.").

ORS 197.352(9) provides that a decision made "under" Measure 37 is not a "land use decision," which would otherwise be subject to LUBA's review jurisdiction. At issue is whether Ordinance 45-62(M37), which modified the county's zoning ordinances, comprehensive plan map, and zoning map, was a decision made "under" Measure 37. More specifically, the issue is whether that ordinance was made "under" the portion of Measure 37 that provides that the county "may modify, remove, or not * * * apply the land use regulation or land use regulations to allow the owner to use the property for a use permitted at the time the owner acquired the property." ORS 197.352(8).

We begin with the word "under," the meaning of which seems fairly straightforward. The ordinary meaning of the word, as it is employed in this context, is "required by : in accordance with : bound by ‹ contract to deliver› ‹statement ~ oath› ‹ the necessity of selling› ‹rights ~ the law›." *Webster's Third New Int'l Dictionary* 2487 (unabridged ed 2002).

■ DLCD contends that, in this case, Ordinance 45-62(M37) was not made "under" ORS 197.352(8) because it was not required by, in accordance with, or bound by that provision of the statute. As we have noted, DLCD contends that the only thing required by the statute was a decision *whether* to modify the local land use regulations, not the decision actually accomplishing the modification itself. As the Ankenys and the county have correctly observed, however, that is not what ORS 197.352(8) says. What the statute says is that, in response to a Measure 37 claim, a local government may pay compensation for the reduced value of the property or it "may modify, remove, or not * * * apply" a local land use regulation. It does not say that the local government "may *make a decision* to modify, remove, or not * * * apply *at some time in the future*" the offending land use regulation. It says that, if the local government wishes to avoid paying compensation for the Measure 37 claim, it must actually accomplish a specified task—that is, it must actually "modify, remove, or not * * * apply" the land use regulation that reduced the value of the affected land. In other words, a decision "under"

ORS 197.352(8) is not merely a decision *whether* to modify a land use regulation. A decision "under" that statute is one that actually accomplishes the modification itself.

In this case, the county *proposed* in its Amended Order of November 7, 2006, that the existing county comprehensive plan and zoning maps be modified *at a future time*, in response to the Ankenys' Measure 37 claim. The November 7 order, by itself, modified nothing. It plainly stated that its earlier order "is amended to express the intent" of the county to modify the plan and zoning maps, after notice and two public hearings. A resolution expressing an intention to allow a use is not the equivalent of a legislative act actually declaring a former use restriction removed or declaring a new use permitted or allowed. *See Baker v. City of Milwaukie*, 271 Or 500, 511, 533 P2d 772 (1975) (distinguishing resolutions from ordinances); *Medford Assembly of God v. City of Medford*, 72 Or App 333, 338, 695 P2d 1379 (1985) (providing that a resolution's interpretation of an ordinance does not have the effect of amending that ordinance).

Only after those hearings did the county actually accomplish the modification of the plan and zoning maps, when it adopted Ordinance 45-62(M37). That ordinance plainly "ordains"—and not merely proposes—that the Ankenys' property be zoned RS and that the comprehensive plan map "is hereby amended accordingly," and that the zoning map designation for the property "shall be changed accordingly." That ordinance modified the existing land use regulations that affected the Ankenys' property. That ordinance was enacted "under" ORS 197.352(8). That ordinance was therefore not a "land use decision" within the meaning of ORS 197.015(11), as provided in ORS 197.352(9).

Because the ordinance was not a "land use decision" within the meaning of ORS 197.015(11), it is not subject to LUBA's exclusive jurisdiction. LUBA did not err.

Affirmed.