Argued and submitted February 17, affirmed April 29, 2009

Karol Susan WELCH,
Beverly Davis,
and Friends of Yamhill County,
*Respondents,*

*and*

STATE OF OREGON,
by and through the Department of
Land Conservation and Development,
*Intervenor-Respondent,*

*v.*

YAMHILL COUNTY,
*Respondent,*

*and*

John KROO,
Trustee of the Kroo Living Trust,
*Petitioner.*

Land Use Board of Appeals
2008129; A140952

206 P3d 1213

Samuel R. Justice argued the cause for petitioner. With him on the brief was Haugeberg, Rueter, Gowell, Fredricks, Higgins & McKeegan, P.C.

Jeffrey L. Kleinman argued the cause and filed the brief for respondents Karol Susan Welch, Beverly Davis, and Friends of Yamhill County.

Stephanie L. Striffler, Senior Assistant Attorney General, argued the cause for intervenor-respondent. With her on the brief were John R. Kroger, Attorney General, and Erika L. Hadlock, Acting Solicitor General.

No appearance for respondent Yamhill County.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Carson, Senior Judge.

HASELTON, P. J.

## HASELTON, P. J.

Yamhill County approved petitioner's subdivision application, which was predicated on his Measure 37 waivers.[1] The Land Use Board of Appeals (LUBA) reversed the county's approval, and petitioner seeks judicial review of LUBA's order. We affirm.

We take the facts from LUBA's order:

"The subject property is zoned Agriculture/Forestry (AF-20). The county's AF-20 zone requires that newly divided parcels include at least 20 acres and does not allow residential subdivisions. Under the AF-20 zoning that applies to the subject property, the disputed subdivision could not be approved. [Petitioner] relied on the Ballot Measure 37 (2004) waivers that he received from the state and the county in 2006 in requesting approval of the disputed subdivision. * * *

"* * * * *

"* * * Those Ballot Measure 37 waivers made it unnecessary for the county to apply its current AF-20 zone or current state statutes that were adopted to protect agricultural and forest land from residential development."

In May 2007, the county approved petitioner's subdivision application, and respondents appealed to LUBA. While that appeal was pending before LUBA, Measure 49 became effective. In February 2008, LUBA remanded the county's decision "to address certain county land use standards."

Following LUBA's remand, there were two significant developments that were related to, but independent of,

---

[1] As context for our discussion, Ballot Measure 37 (2004), which was codified at *former* ORS 197.352 (2005), *amended by* Oregon Laws 2007, chapter 424, section 4, *renumbered as* ORS 195.305 (2007), provided, in a nutshell, that public entities that enacted or enforced land use regulations that affected the fair market value of a claimant's property either had to pay just compensation or waive the offending regulations. In 2007, the voters passed Ballot Measure 49, Oregon Laws 2007, chapter 424, which "extinguish[ed] and replace[d] the benefits and procedures that Measure 37 granted to landowners." *Corey v. DLCD*, 344 Or 457, 465, 184 P3d 1109 (2008).

Additionally, throughout this opinion, the term "petitioner" refers to petitioner on review John Kroo and the term "respondents" refers to Karol Susan Welch, Beverly Davis, and Friends of Yamhill County. Although Yamhill County was named as a respondent on review, it did not appear.

the remand proceeding. First, petitioner sought a determination from a county hearings officer that, under subsection 5(3) of Measure 49, he was entitled to just compensation as provided in his Measure 37 waivers because he had a vested right to complete and continue the use described in those waivers. Second, in May 2008, the Supreme Court issued its decision in *Corey v. DLCD*, 344 Or 457, 467, 184 P3d 1109 (2008), in which the court concluded that, subject to a single exception, Measure 49 deprived Measure 37 waivers "of any continuing viability." The exception to which the Supreme Court referred is commonly referred to as the "vested rights" exception under subsection 5(3) of Measure 49 and is the exception under which petitioner sought to obtain just compensation as provided in his Measure 37 waivers.

While petitioner was in the process of attempting to obtain a determination from the hearings officer that he had a vested right to complete and continue the use described in his Measure 37 waivers, the county's remand proceedings concerning the subdivision application were apparently underway. During those proceedings, "[respondents] argued that Ballot Measure 49 (2007) had the legal effect of rendering the [petitioner's] Ballot Measure 37 waivers legally ineffective and making a county post-Ballot Measure 49 subdivision approval decision erroneous." After the county's final public hearing on remand and before the issuance of the county's decision concerning the subdivision application, the county hearings officer determined that petitioner "did not have a vested right under Section 5(3) of Ballot Measure 49."[2] Ultimately, in July 2008, the county again approved the subdivision application.

At that point, respondents appealed the county's approval of the application, and LUBA reversed, reasoning that

"Ballot Measure 49 renders [petitioner's] Ballot Measure 37 waivers legally ineffective, as a basis for county approval of the disputed subdivision. [Petitioner's] Ballot Measure 37 waivers are without legal effect, except to allow [petitioner]

---

[2] Eventually, petitioner sought review of the hearings officer's determination in the Yamhill County Circuit Court. *See* ORS 195.318 (providing for judicial review of decisions made under subsection 5(3) of Measure 49 in circuit court).

to continue to seek ultimate resolution of his vested rights claim before the Yamhill County Circuit Court and hearings officer. The county's July 9, 2008, decision to approve the disputed subdivision was based on its failure to recognize that [petitioner's] Ballot Measure 37 waivers no longer shield [petitioner's] property from current land use laws that preclude approval of the disputed subdivision. For that reason, the county's decision must be reversed."

Petitioner seeks review of LUBA's order, raising six assignments of error. We write only to address his second assignment of error, that LUBA lacked subject matter jurisdiction, and his fifth assignment of error, concerning LUBA's application of ORS 215.427(3)(a) (commonly known as the "goal-post statute"). We affirm petitioner's remaining assignments without further discussion.

We begin with petitioner's assignment of error that LUBA lacked subject matter jurisdiction. Although the parties and intervenor Department of Land Conservation and Development appear to agree that LUBA had jurisdiction to review the county's approval of petitioner's subdivision application, *see* ORS 197.825(1) (providing that LUBA has exclusive jurisdiction to review a local government's land use decisions), petitioner asserts that LUBA lacked jurisdiction to determine that petitioner's Measure 37 waivers were without legal effect.

More specifically, we understand petitioner to contend that (1) LUBA made a determination that, under subsection 5(3) of Measure 49, petitioner is not entitled to just compensation as provided in his Measure 37 waivers, and (2) LUBA lacked jurisdiction to make such a determination because it is not a land use decision. Respondents and intervenor disagree with petitioner, asserting that the county's approval of petitioner's subdivision application was a land use decision over which LUBA had jurisdiction and that LUBA appropriately considered the effects of Measure 49 on that decision, which was predicated on petitioner's Measure 37 waivers.

As pertinent to petitioner's argument, Measure 49 governs whether petitioner is entitled to just compensation

as provided in his Measure 37 waivers. Section 5 of Measure 49 provides, in part:

"A claimant that filed a claim under ORS 197.352 on or before the date of adjournment sine die of the 2007 regular session of the Seventy-fourth Legislative Assembly is entitled to just compensation as provided in:

"* * * * *

"(3)   A waiver issued before the effective date of this 2007 Act to the extent that the claimant's use of the property complies with the waiver and the claimant has a common law vested right on the effective date of this 2007 Act to complete and continue the use described in the waiver."

Or Laws 2007, ch 424, § 5. A determination under subsection 5(3) of Measure 49 concerning whether a claimant is entitled to just compensation as provided in a Measure 37 waiver is not a land use decision. ORS 195.305(7) (providing that "[a] decision by a public entity that an owner qualifies for just compensation under ORS 195.305 to 195.336 and sections 5 to 11, chapter 424, Oregon Laws 2007, and a decision by a public entity on the nature and extent of that compensation are not land use decisions"). *See also* ORS 195.318(1) (governing judicial review of just compensation decisions and reiterating that "[a] determination by a public entity under ORS 195.310 to 195.314 or sections 5 to 11, chapter 424, Oregon Laws 2007, is not a land use decision").

Based on that statutory framework, we agree with petitioner's general assertion that LUBA lacks authority to make or review decisions concerning entitlement to just compensation. However, we disagree with petitioner's contention that LUBA made such a determination in this case.

As LUBA expressly explained in its order, the land use decision on review was the county's approval of petitioner's subdivision application. LUBA reversed the county's decision because its approval had been predicated on petitioner's Measure 37 waivers. LUBA noted that, in another case, it had concluded that,

"after Ballot Measure 49 took effect on December 6, 2007, previously issued Ballot Measure 37 waivers are legally ineffective[3] and local governments may no longer rely on

---

[3] That conclusion is consistent with recent case law. *See Corey*, 344 Or at 466-67 (holding that "Measure 49 by its terms deprives Measure 37 waivers—and *all*

Ballot Measure 37 waivers to grant land use approvals that would otherwise be precluded by current land use laws."

LUBA expressly acknowledged that a proceeding was pending in circuit court to determine whether petitioner was entitled to just compensation as provided in his Measure 37 waivers because he had a vested right to continue or complete the uses described therein, but it reasoned that,

"[u]nless and until [petitioner] receives such a vested rights determination, a county decision to grant preliminary subdivision approval must stand on its own. Without a legally effective Ballot Measure 37 waiver, the county's July 9, 2008[,] decision cannot stand on its own."

In other words, LUBA's order demonstrates that it reviewed the land use decision—that is, the county's subdivision approval—by applying the law to the record before it. In doing so, LUBA expressly declined to make any determination concerning whether petitioner was entitled to just compensation as provided in his Measure 37 waivers and concluded that, because, at the time the county made its decision, there had been no such determination, those waivers were ineffective to serve as the basis for the county's approval.[4]

orders disposing of Measure 37 claims--of any continuing viability" unless a determination is made under subsection 5(3) of Measure 49 that a claimant is entitled to just compensation as provided in a Measure 37 waiver (emphasis in original)); *Cyrus v. Board of County Commissioners*, 226 Or App 1, 13, 202 P3d 274 (2009) (stating that "a Measure 37 order has 'continuing viability' only where a Measure 37 claimant can establish 'vested rights' under subsection 5(3) of Measure 49").

[4] In petitioner's brief, he refers to *DLCD v. Klamath County*, 215 Or App 297, 168 P3d 1241 (2007). In that case, in response to a claimant's demand for just compensation under Measure 37, the county enacted an ordinance that modified the regulations that affected the claimant's property so as to allow the development that the claimant sought. *Id.* at 300-01. LUBA concluded that it lacked jurisdiction to review the ordinance. *Id.* at 302. In affirming LUBA, we rejected DLCD's argument that the ordinance embodied two decisions—that is, (1) a decision under Measure 37 *whether* to modify land use regulations affecting the claimant's property that was not subject to LUBA's jurisdiction and (2) a land use decision to *actually* modify those regulations that was subject to LUBA's jurisdiction. *Id.* at 302-03, 305. We held that a decision under Measure 37 was one that effectuated the modification of the land use regulations; thus, LUBA lacked jurisdiction to review the ordinance. *Id.* at 305.

If petitioner's reference to *Klamath County* is an attempt to assert that, because the county's decision to approve the subdivision application was predicated on his Measure 37 waivers, the county's actual approval was a decision under subsection 5(3) of Measure 49 that is excluded from LUBA's jurisdiction, we disagree with that assertion. Even if the reasoning in *Klamath County*, which was

For those reasons, we reject petitioner's second assignment of error.[5]

Finally, in his fifth assignment of error, petitioner asserts that LUBA erred in its application of ORS 215.427(3)(a) (commonly known as the "goal-post statute"), which provides that, once particular applications are complete, "approval or denial of the application shall be based upon the standards and criteria that were applicable at the time the application was first submitted." We understand petitioner to raise essentially the same challenges concerning the goal-post statute that we recently addressed and rejected in *Pete's Mountain Homeowners Assn. v. Clackamas Cty.*, 227 Or App 140, 151, 204 P3d 802 (2009) (holding that, "although Measure 37 waivers are part of the standards and criteria that cannot be changed under the goal-post statute, Measure 49 supersedes both Measure 37 and the goal-post statute"). However, we do not reach the merits of petitioner's present contentions regarding the application of the goal-post statute, because we agree with respondents and intervenor that petitioner did not preserve those contentions before LUBA.

In *VanSpeybroeck v. Tillamook County*, 221 Or App 677, 691 n 5, 191 P3d 712 (2008), we noted that the statutory framework for the review of land use decisions

"suggests that issues be preserved at the local government level for board review, and at LUBA level for judicial review, in sufficient detail to allow a thorough examination

_____

based on the text of a statutory scheme other than the one that applies to this case, informs our analysis, in that case, the decision before LUBA was the decision in response to a claim for just compensation under Measure 37. However, in this case, the decision before LUBA was not a decision concerning petitioner's entitlement to just compensation under subsection 5(3) of Measure 49. Instead, the decision before LUBA was a land use decision—that is, the approval of petitioner's subdivision application. The fundamental nature of that decision was not affected because petitioner's entitlement to just compensation under subsection 5(3) of Measure 49 was in the process of being adjudicated in a different forum.

[5] After oral argument in this case, the parties and intervenor informed us that, in early March, the circuit court issued a decision, concluding that petitioner is entitled to just compensation as provided in his Measure 37 waivers—that is, that petitioner has a vested right to continue the use described in those waivers. That determination, however, is not in the record on review. *See* ORS 197.850(8) (confining our review to the record). We express no opinion as to the validity of any such determination by the circuit court or the effect that such a determination might have in any application proceeding.

of the issue by the decision-maker, so as to potentially obviate the need for further review or at least to make that review more efficient and timely."

We have reviewed petitioner's arguments before LUBA and do not understand them to have alerted LUBA that it needed to determine the application of the goal-post statute to this case. Further, we do not understand that LUBA addressed issues concerning the goal-post statute. In fact, LUBA did not cite ORS 215.427(3)(a) or refer to the "goal-post statute" in its order. Accordingly, the matter was not preserved for our review.

Affirmed.