Argued and submitted February 3, affirmed May 31, 2012

Brian MAGUIRE,
*Petitioner,*

*v.*

CLACKAMAS COUNTY,
*Respondent.*

Land Use Board of Appeals
2011040; A150183

279 P3d 314

Anne C. Davies argued the cause and filed the brief for petitioner.

Scott Ciecko, Assistant County Counsel, waived appearance for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

The owners of a 21.35-acre parcel zoned for exclusive farm use (EFU) in Clackamas County, applied for and received a Measure 37 waiver of land use regulations and sought to partition the property and develop it for 23 home sites. After the passage of Measure 49, they elected supplemental review of their Measure 37 claim under section 6 of Measure 49 and sought approval for three additional home sites. The Department of Land Conservation and Development (DLCD) partially approved the Measure 49 claim, and authorized the owners to seek partition of the property to create one additional parcel and to construct one additional dwelling.

The owners filed an application with Clackamas County to partition the property pursuant to the DLCD authorization, that is, they sought a single partition to construct a single additional dwelling. Petitioner objected to the proposed partition for the reasons that the proposed home site was located on property that is classified as high-value farmland and the proposal did not adequately cluster the proposed home site with existing homes on the property and in the area so as to preserve suitable land for farm use. Petitioner suggested an alternative home site that, in petitioner's view, better clustered the proposed home site with existing homes and did not use high-value farmland.

After a hearing, the county hearings officer approved the proposed partition. Petitioner appealed the matter to LUBA. LUBA concluded that the county's decision to partition the land pursuant to Measure 49 is not a land use decision subject to LUBA's jurisdiction and dismissed the appeal. For that reason, LUBA did not consider the merits of petitioner's appeal to LUBA. Petitioner seeks review, contending that the county's decision is a land use decision and that LUBA erred in dismissing the appeal. In the alternative, petitioner asserts that LUBA erred in not transferring the appeal to circuit court pursuant to ORS 34.102(4). The county agreed with petitioner's jurisdictional argument before LUBA, but did not appear before this court.[1] This court may

---

[1] Nor have the owners appeared.

reverse or remand LUBA's decision if we determine that LUBA's order is unlawful in substance or procedure. However, procedural error shall not be cause for reversal or remand "unless the court shall find that substantial rights of the petitioner were prejudiced thereby." ORS 197.850(9)(a). We conclude that LUBA did not err, and affirm.

Generally, LUBA has exclusive jurisdiction over "land use decisions." ORS 197.015(10)(a)(A) defines a "land use decision" as a final decision or determination made by a local government that concerns the application of a land use regulation. The challenged partition decision involved the application of one or more county land use regulations and therefore, barring some exception, would be a land use decision. Measure 49, section 16, now codified at ORS 195.318(1), provides that a determination by a public entity under Measure 49, sections 5 to 11, is not a land use decision; therefore, such a determination is not subject to LUBA's jurisdiction. A resolution of this petition turns on the legal question whether the county's decision under review, approving the partition of the subject property, is an exception to the general rule because the county's determination is a decision "under" Measure 49, sections 5 to 11.

Some historical context is helpful. Measure 37, adopted through the initiative process in the 2004 general election, limited the ability of public entities to restrict development based on regulations adopted after the owner acquired the property. Measure 37 allowed local governments to waive or choose not to apply certain land use regulations to allow the owner to use property for a use permitted when the owner acquired the property.

In 2007, the legislature enacted Oregon Laws 2007, chapter 424, subsequently referred to the voters as Measure 49 and adopted in November 2007. Measure 49 superseded Measure 37. *Corey v. DLCD*, 344 Or 457, 466-67, 184 P3d 1109 (2008). Measure 49 extinguished Measure 37 waivers and allowed a Measure 37 claimant to pursue one of three alternative "pathways." *Friends of Yamhill County v. Board of Commissioners*, 351 Or 219, 225, 264 P3d 1265 (2011). Under Measure 49, a Measure 37 claimant could elect to seek a limited number of dwellings on newly created lots or could

pursue a "vested rights" claim for full Measure 37 relief. Or Laws 2007, ch 424, §§ 5-9.

As noted, the property owners in this case elected to pursue a claim under section 6 of Measure 49 for a limited number of parcels and dwellings, and obtained approval from DLCD to apply for one additional parcel and one additional dwelling. Section 11 of Measure 49 provides development standards for local governments to apply when considering whether to approve a partition or subdivision under Measure 49. Section 11(1) of Measure 49 authorizes governmental entities to apply certain land use regulations in reviewing an application for a subdivision or partition of property, or the establishment of one or more dwellings authorized under sections 5 to 11 of Measure 49.[2] Sections 11(2) to (5) set out additional criteria that governmental entities must apply in creating a new parcel or approving one or more dwellings under Measure 49.

---

[2] Section 11 of Measure 49 provides, in relevant part:

"(1) A subdivision or partition of property, or the establishment of a dwelling on property, authorized under sections 5 to 11, chapter 424, Oregon Laws 2007 [series became sections 5 to 11, chapter 424, Oregon Laws 2007, and sections 2 to 9 and 17, chapter 855, Oregon Laws 2009], must comply with all applicable standards governing the siting or development of the dwelling, lot or parcel including, but not limited to, the location, design, construction or size of the dwelling, lot or parcel. However, the standards must not be applied in a manner that has the effect of prohibiting the establishment of the dwelling, lot or parcel authorized under sections 5 to 11, chapter 424, Oregon Laws 2007, unless the standards are reasonably necessary to avoid or abate a nuisance, to protect public health or safety or to carry out federal law.

"(2) If the property described in a claim is bisected by an urban growth boundary, any new dwelling, lot or parcel established on the property pursuant to an order under section 6, chapter 424, Oregon Laws 2007, must be located on the portion of the property outside the urban growth boundary.

"(3) Before beginning construction of any dwelling authorized under section 6 or 7, chapter 424, Oregon Laws 2007, the owner must comply with the requirements of ORS 215.293 if the property is in an exclusive farm use zone, a forest zone or a mixed farm and forest zone.

"(4)(a) A city or county may approve the creation of a lot or parcel to contain a dwelling authorized under sections 5 to 11, chapter 424, Oregon Laws 2007. However, a new lot or parcel located in an exclusive farm use zone, a forest zone or a mixed farm and forest zone may not exceed:

"(A) Two acres if the lot or parcel is located on high-value farmland, on high-value forestland or on land within a ground water restricted area; or

"(B) Five acres if the lot or parcel is not located on high-value farmland, on high-value forestland or on land within a ground water restricted area.

Measure 49 describes how an adversely affected person obtains judicial review. Section 16 of Measure 49, now codified at ORS 195.318(1), provides, in part:

> "A person that is adversely affected by a final determination of a public entity under * * * sections 5 to 11 [of Measure 49] * * * may obtain judicial review of that determination under ORS 34.010 to 34.100, if the determination is made by * * * a county[.] * * * A determination by a public entity under * * * sections 5 to 11 [of Measure 49] * * * is not a land use decision."

At oral argument and on its own motion, LUBA raised the issue of whether the county's determination was under sections 5 to 11 of Measure 49 and, therefore, not a land use decision. In addition, LUBA requested briefing from the parties on that issue. After considering the parties' arguments and briefs, LUBA concluded that the county's decision was not a land use decision. LUBA reasoned that the county's partition approval was a final determination "under" section 11 of Measure 49, because the county's determination was a partition that was subject to the substantive standards set forth in that section. LUBA concluded that, pursuant to ORS 195.318(1), the partition approval was not a land use decision; that exclusive jurisdiction for review of the county's decision lies with the circuit court, pursuant to ORS 34.010 to 34.100; and, that LUBA lacked jurisdiction to consider the appeal. Accordingly, LUBA dismissed petitioner's appeal. After LUBA dismissed the appeal, petitioner filed a motion to transfer his appeal to the circuit court. LUBA denied the motion to transfer.

---

"(b) If the property is in an exclusive farm use zone, a forest zone or a mixed farm and forest zone, the new lots or parcels created must be clustered so as to maximize suitability of the remnant lot or parcel for farm or forest use.

"(5) If an owner is authorized to subdivide or partition more than one property, or to establish dwellings on more than one property, under sections 5 to 11, chapter 424, Oregon Laws 2007, and the properties are in an exclusive farm use zone, a forest zone or a mixed farm and forest zone, the owner may cluster some or all of the dwellings, lots or parcels on one of the properties if that property is less suitable than the other properties for farm or forest use. If one of the properties is zoned for residential use, the owner may cluster some or all of the dwellings, lots or parcels that would have been located in an exclusive farm use zone, a forest zone or a mixed farm and forest zone on the property zoned for residential use."

In his first assignment of error on judicial review, petitioner contends that LUBA erred in dismissing the appeal because, although certain criteria set forth in Measure 49, section 11, were applicable to the county's consideration of the partition in this case, that fact did not make the county's decision one that is "under" Measure 49, section 11.

We digress slightly to address the specific facts of the Measure 49 claim and the county's decision. The owners of the subject property timely filed claims under Measure 37 with county and state entities, respectively, seeking to partition the subject property, currently zoned EFU, into 23 lots. After the passage of Measure 49, the owners elected to pursue supplemental review of their Measure 37 claim under Measure 49, section 6. That section provides, generally, that a Measure 37 claimant with a claim filed before the end of the 2007 legislative session (June 28, 2007), relating to land classified as high-value farmland, which is outside an urban growth boundary, may seek up to three home site approvals (reduced by the number of existing home sites on the claim property). On May 12, 2010, DLCD issued a Measure 49 "Final Order and Home Site Authorization," authorizing the owners to partition the subject property to create one additional parcel and one additional dwelling. The order included the statement that, "[b]ecause the property is located in an exclusive farm use zone, Measure 49 requires new home sites be clustered so as to maximize suitability of the remnant lot or parcel for farm or forest use."

The owners subsequently filed an application with the county to partition the property pursuant to the DLCD authorization. The partition application proposed to create a 19.35-acre parcel with the existing dwelling on the northern portion of the property, and a two-acre parcel on the southern portion of property. The second dwelling would be located on the two-acre parcel, which contained land with high-value soils. The new parcel and dwelling would not be clustered with the existing dwelling. The county planning director approved the partition.

Petitioner appealed to the county hearings officer. Section 11(4)(b) of Measure 49 requires that,

"[i]f the property is in an exclusive farm use zone * * * the new lots or parcels created must be clustered so as to maximize suitability of the remnant lot or parcel for farm * * * use."

Relying on section 11(4)(b), petitioner contended that dwellings authorized under Measure 49 must be clustered with existing dwellings and away from high-value soils. Petitioner proposed a different location for the second parcel and a home site that was adjacent to the existing home site and not built on high-value farmland.

As a factual matter, the hearings officer agreed with county planning staff that the record showed that almost the entire 21.35-acre parcel is on land that is classified as high-value farmland and that the two-acre parcel proposed by petitioner contained lower quality soils and was over the drain field and back-up drain field for the existing dwelling. In analyzing the text of Measure 49, section 11(4)(b), the county hearings officer agreed with the county staff's interpretation that only new lots must be clustered with each other. Because only one new parcel was being created, the hearings officer reasoned that the smaller parcel could be located on any portion of the original 21.35-acre parcel, and clustering the new parcel near the existing dwelling on the larger parcel was not required. The hearings officer further reasoned that, based on the facts in this case, section 11(4)(b) did not require that a new parcel could not be placed on high-value farmland. The hearings officer accordingly rejected petitioner's appeal and upheld the proposed partition. Thus, petitioner's challenge to the approval was based, in part, on section 11(4)(b) of Measure 49, and the hearings officer's rejection of petitioner's challenge was based on his interpretation of section 11(4)(b).

In contending on judicial review that the county's decision is nonetheless not a decision under Measure 49, petitioner provides some historical context. Petitioner notes that Measure 37 contained a jurisdictional provision similar to ORS 195.318(1), codified at ORS 197.352(9) (2005), stating that "[a] decision by a governing body under [Measure 37] shall not be considered a land use decision[.]" In *DLCD v.*

*Klamath County*, 54 Or LUBA 113, 120-21, *aff'd*, 215 Or App 297, 168 P3d 1241 (2007), LUBA determined that,

> "where * * * a decision is made 'not to apply' certain land use regulations (but other land use regulations remain) and under those modified or remaining land use regulations additional discretionary permits are needed to construct the use, any such discretionary permit decisions will almost certainly be land use decisions. We tend to agree that the best reading of ORS 197.352(9) is that such discretionary permits are not properly viewed as decisions *under* ORS 197.352."

*See also Welch v. Yamhill County*, 55 Or LUBA 697, 701 (2007) (relying on *Klamath County* to reach the same conclusion). (Emphasis in original.) LUBA took the position that, under Measure 37, a public entity's decision to modify or waive land use laws in response to a Measure 37 claim is not a land use decision and therefore is not reviewable by LUBA. However, a subsequent decision applying modified land use laws or land use laws that were not waived was a land use decision reviewable by LUBA.

In petitioner's view, ORS 195.318(1) should be construed similarly: The initial determination by DLCD whether a person is entitled to relief under Measure 49 is "under" sections 5 to 11 of Measure 49 and should not be treated as a land use decision; however, the subsequent, post-claim review of a partition application by the county is a land use decision within the exclusive jurisdiction of LUBA. That analysis has some logical appeal. Land use decisions are decisions involving substantive and discretionary application of land use regulations. The initial determination of qualification for relief under Measure 49—like the determination of relief under Measure 37—is a legal determination that turns on questions such as ownership, timeliness of filing, historical zoning, and location of the property, and does not appear to involve substantive application of land use laws; post-claim decisions relating to partition and subdivision do involve application of those land use laws and regulations. However, unlike Measure 37, which contained no substantive provisions relating to subdivisions, partitions, and dwellings, section 11 of Measure 49 set out actual approval criteria

for "[a] subdivision or partition of property, or the establishment of a dwelling on property, authorized under sections 5 to 11." For example, subsection 11(4)(a)(A) of Measure 49 provides that a new lot or parcel on resource land may not exceed two acres if the lot or parcel is located on high-value farmland. Subsection 11(4)(a)(B) provides that a new lot or parcel may not exceed five acres if the lot or parcel is not located on high-value farmland or on land within a ground water restricted area. Subsection 11(4)(b) contains the provision whose application is disputed in this case regarding the clustering of new lots or parcels. Those are examples of some of the approval criteria included in section 11 of Measure 49. The fact that those approval criteria are expressly cross-referenced in ORS 195.318(1) significantly distinguishes ORS 195.318(1) from ORS 197.352(9), which did not cross-reference substantive approval criteria.

Petitioner asserts, nonetheless, that the fact that sections 5 to 11 of Measure 49 are among the criteria applied in approving a partition does not make an approval of a partition a determination "under" sections 5 to 11. Petitioner reasons, first, that, when, as here, a governmental entity determines after application of criteria that a provision does not apply, that decision by the governmental entity is not a determination "under" the provision. Petitioner reasons that, because the hearings officer determined that section 11's requirement that home sites be clustered was inapplicable, the hearings officer's decision was not "under" section 11. We reject that interpretation as implausible. Under petitioner's interpretation, LUBA's jurisdiction would depend on a governmental entity's determination as to whether section 11 applies, regardless of the correctness of that determination.

Second, in petitioner's view, ORS 195.305(7) should inform our interpretation of ORS 195.318(1). ORS 195.305 to 195.336 apply to claims, filed *after* June 28, 2007, for "just compensation" as a result of a public entity's enactment of land use regulations that reduce the fair market value of private property. Sections 5 to 11 of chapter 424, Oregon Laws 2007 (Measure 49), apply to Measure 37 claims filed *on or before* June 28, 2007. ORS 195.305(7) provides:

"A decision by a public entity that an owner qualifies for just compensation under ORS 195.305 to 195.336 and sections 5 to 11, chapter 424, Oregon Laws 2007, and sections 2 to 9 and 17, chapter 855, Oregon Laws 2009, and a decision by a public entity on the nature and extent of that compensation are not land use decisions."

ORS 195.305(7) concerns a decision that qualifies an owner *"for just compensation* under ORS 195.305 to 195.336 and sections 5 to 11, chapter 424, Oregon Laws 2007, and sections 2 to 9 and 17, chapter 855" (emphasis added) and the nature and extent of that compensation. Decisions by a governmental entity that an owner qualifies for just compensation and the extent of that just compensation "are not land use decisions." ORS 195.305(7).

In *Welch v. Yamhill County*, 228 Or App 124, 130, 206 P3d 1213 (2009), citing that statute as well as ORS 195.318(1), we held that a determination under subsection 5(3) of Measure 49 *concerning whether a claimant is entitled to just compensation* as provided in a Measure 37 waiver is not a land use decision. Petitioner contends that, as used in ORS 195.318(1), the phrase "[a] determination by a public entity under ORS 195.310 to 195.314 or sections 5 to 11, chapter 424, Oregon Laws 2007" is merely a shorthand reference for the same types of decisions governed by ORS 195.305(7), *i.e.*, those determining whether an owner qualifies for "just compensation," which are not land use decisions. This contention leads petitioner to argue that ORS 195.318(1) does not exclude from LUBA's jurisdiction land use decisions that apply the approval criteria of section 11 of Measure 49, so long as the governmental entity's determination does not bear on a claimant's entitlement to "just compensation" under Measure 49.

Third, petitioner contends that, when the texts of ORS 195.305(7) and ORS 195.318(1) and the historical context of Measure 37 and Measure 49 are correctly understood, it becomes apparent that the phrase "under sections 5 to 11" in ORS 195.318(1) is simply a shorthand reference to those Measure 49 claims based on Measure 37 claims filed before June 28, 2007. In the abstract, that is a plausible reading of ORS 195.318(1). However, as plausible as that interpretation is, it is not a reasonable interpretation of ORS 195.318(1),

because it ignores the plain text of section 11 of Measure 49, which, as petitioner acknowledges, includes approval criteria. *See Hoekstre v. DLCD*, 249 Or App 626, 278 P3d 123 (2012) (a plausible reading of Measure 49 may still be incorrect). Contrary to petitioner's contention, we conclude that a decision applying those approval criteria is a decision "under" sections 5 to 11.

As we recently explained in *Jones v. Douglas County (A148612)*, 247 Or App 81, 94, 270 P3d 278 (2011), the term "under" as defined in various dictionaries and as used in a context similar to the one at issue here can mean "in accordance with" or "pursuant to." Depending on context, the term "pursuant to," in turn, means either "in compliance with," "in accordance with," or "as authorized by." In *Jones*, the dispute concerned LUBA's jurisdiction over a decision extending the establishment of an "owner of record" dwelling. *Id.* at 84. There, the word "under" was part of a sentence in an administrative rule, OAR 660-033-0140(3):

> "Approval of an extension granted *under* this rule is an administrative decision, is not a land use decision as described in ORS 197.015 and is not subject to appeal as a land use decision."

(Emphasis added.) We held that, in context, the term "under" as used in the rule meant "as authorized by." So long as the local government had purported to allow an extension under the authority of OAR 660-033-0140(3), subsection (3) operated to preempt LUBA review. 247 Or App at 94. Here, we also conclude that the term "under" as used in ORS 195.318(1) means "as authorized by" and that, if the local government purported to review the Measure 49 partition application under the authority of sections 5 to 11, then ORS 195.318(1) operates to preempt LUBA review. Based on the record, we easily conclude that the county hearings officer purported to review the Measure 49 partition application under the authority of sections 5 to 11 of Measure 49, and that ORS 195.318(1) operates to preempt LUBA review. Thus, LUBA correctly held that it lacked jurisdiction to consider petitioner's appeal.[3]

---

[3] Because LUBA dismissed the appeal, it did not consider the merits of petitioner's argument. Because we affirm LUBA's dismissal for lack of jurisdiction, we express no opinion on the merits.

We turn our attention to the transfer question. As noted, at oral argument on October 20, 2011, LUBA raised with the parties the issue of whether the county's decision was a land use decision subject to LUBA's jurisdiction and asked for briefing. On November 14, 2011, LUBA issued a final order determining that ORS 195.318(1) deprives LUBA of jurisdiction over the challenged decision. Because no party had filed a motion to transfer the appeal to the circuit court as provided in ORS 34.102(4) and OAR 661-010-0075, LUBA dismissed the appeal.

On November 17, 2011, after the appeal had been dismissed, petitioner filed a motion to transfer the appeal to the circuit court pursuant to ORS 34.102(4) and OAR 661-010-0075(11)(a). LUBA rejected the motion on two grounds: (1) Petitioner had not complied with the procedures set out in ORS 661-010-0075(11)(a), specifically the requirement that a motion to transfer be filed "not later than 14 days after the date" that the board raises a jurisdictional issue on its own motion; and (2) LUBA lacks authority to reconsider a final order, once issued, and therefore could not reconsider or change its disposition dismissing the appeal. Thus, LUBA adhered to its determination dismissing the appeal.

In his second and third assignments of error, petitioner contends that LUBA erred in not transferring the appeal to the circuit court and in rejecting his motion to transfer the case to the circuit court. ORS 34.102(4) provides:

> "A notice of intent to appeal filed with the Land Use Board of Appeals pursuant to ORS 197.830 and requesting review of a decision of a municipal corporation * * * that is not reviewable as a land use decision * * * shall be transferred to the circuit court and treated as a petition for writ of review. If the notice was not filed with the board within the time allowed for filing a petition for writ of review pursuant to ORS 34.010 to 34.100, the court shall dismiss the petition."

That statute was first enacted in 1987 as ORS 19.230(4), Oregon Laws 1987, chapter 793, section 1, and renumbered as ORS 34.102 in 1997. It is undisputed that in enacting that provision, the legislature's intention was to prevent the

unjust consequence of dismissal of a matter when a petitioner mistakenly but in good faith files a timely petition in the incorrect forum. *See, e.g., ZRZ Realty Company v. City of Portland*, 49 Or LUBA 309 (2005) (so stating).[4]

LUBA has adopted an administrative rule implementing ORS 34.102(4) and setting forth a procedure by which it authorizes a transfer of an appeal to the circuit court.[5] OAR 661-010-0075(11) provides, in part:

"(a)   Any party may request, pursuant to ORS 34.102, that an appeal be transferred to the circuit court of the county in which the appealed decision was made, in the event the Board determines the appealed decision is not reviewable as a land use decision or limited land use decision as defined in ORS 197.015(10) or (12).

"(b)   A request for a transfer pursuant to ORS 34.102 shall be initiated by filing a motion to transfer to circuit court not later than 14 days after the date a respondent's brief or motion that challenges the Board's jurisdiction is filed. *If the Board raises a jurisdictional issue on its own motion, a motion to transfer to circuit court shall be filed not later than 14 days after the date the moving party learns the Board has raised a jurisdictional issue.*

"(c)   If the Board determines the appealed decision is not reviewable as a land use decision or limited land use decision as defined in ORS 197.015(10) or (12), the Board shall dismiss the appeal unless a motion to transfer to circuit court is filed as provided in subsection (11)(b) of this rule, in which case the Board shall transfer the appeal to the circuit court of the county in which the appealed decision was made."

(Emphasis added.) At least since its enactment of the rule in 1990, LUBA has required that a party file a request for transfer of a case in order to trigger LUBA's obligation under ORS 34.102(4) to transfer to the circuit court a case over which it determines it lacks jurisdiction. *Southwood Homeowners Association v. City of Philomath*, 20 Or LUBA 279 (1990).

---

[4] The legislature has created a similar process for the transfer of matters between the circuit court and the Court of Appeals and other tribunals. ORS 14.165.

[5] LUBA also adopted an administrative rule, OAR 661-010-0075(12), which describes LUBA's procedures when the circuit court transfers an appeal to LUBA.

And at least since that time, it has been the practice of practitioners before LUBA to file conditional motions to transfer in the event that LUBA determines that it lacks jurisdiction. *See Miller v. City of Dayton*, 22 Or LUBA 661, *aff'd*, 113 Or App 300, 305, 833 P2d 299 (1992).

LUBA also has adopted OAR 661-010-0005, which provides, in part:

> "These rules are intended to promote the speediest practicable review of land use decisions and limited land use decisions, in accordance with ORS 197.805-197.855, while affording all interested persons reasonable notice and opportunity to intervene, reasonable time to prepare and submit their cases, and a full and fair hearing. The rules shall be interpreted to carry out these objectives and to promote justice. Technical violations not affecting the substantial rights of parties shall not interfere with the review of a land use decision or limited land use decision."

LUBA has interpreted that rule to permit it to waive the time restriction set out in OAR 661-010-0075(11)(b), if the motion for transfer is filed while the matter is still pending before LUBA. Thus, when a party has filed an untimely motion to transfer a matter to circuit court, so long as the matter is still pending before LUBA, LUBA has treated the untimeliness as a "technical violation" within the meaning of OAR 661-010-0005 and, despite the lack of compliance with the time requirements of OAR 661-010-0075(11)(b), has granted the motion for transfer, unless the opposing party has shown substantial prejudice. *See, e.g., Baker v. City of Woodburn*, 37 Or LUBA 563 (2000). When, however, as here, the motion to transfer was not filed until after the issuance of LUBA's final order, LUBA has declined to reconsider the order and transfer the matter despite the untimeliness, reasoning that it lacks authority to reconsider its own final orders. *Ehle v. City of Salem*, 55 Or LUBA 685, 687 (2007). Following that precedent in this case, when, after LUBA had issued its final order dismissing petitioner's appeal, petitioner filed a motion on November 17, 2011, to transfer the matter to circuit court, LUBA denied the motion, reasoning that it had previously dismissed the appeal and lacked authority to reconsider that final order.

On judicial review, petitioner does not challenge LUBA's determination that it is unable to reconsider its own final order. Petitioner contends, however, that LUBA's administrative rule setting forth procedures for transfer to circuit court unlawfully imposes a requirement that a party file a motion to transfer the appeal to circuit court, when no such requirement is stated in the statute. In petitioner's view, the requirement of ORS 34.102(4) that a matter *shall* be transferred to circuit court and treated as a petition for writ of review means that LUBA *must* transfer an appeal over which it lacks jurisdiction to circuit court, and LUBA's additional procedural requirement in OAR 661-010-0075(11)(b), that a party file a motion to transfer the appeal, violates the statute. In other words, petitioner contends, OAR 661-010-0075(11) violates ORS 34.102(4), because the rule unlawfully imposes procedural prerequisites for the transfer of an appeal to circuit court when ORS 34.102(4) does not contain similar procedural prerequisites. *See Marolla v. DPSST*, 245 Or App 226, 231, 263 P3d 1035 (2011) (administrative rule exceeds an agency's statutory authority if it departs from a legal standard expressed or implied in a particular law being administered).

We reject the contention that LUBA's administrative rule exceeds the statutory authority granted LUBA. In *Miller*, 113 Or App at 302, we rejected an argument that LUBA erred in failing to transfer the case to circuit court, reasoning that the petitioner had not filed a motion to transfer the case under the predecessor statute and administrative rule. Petitioner contends that *Miller* was wrongly decided or is not controlling, because the issue of the lawfulness of LUBA's administrative rule had not been brought to the court's attention in that case.[6]

Whether or not we had the question before us in *Miller*, we now conclude that LUBA's implementation of ORS 34.102 through OAR 661-010-0075(11) is lawful. ORS 197.820(4) provides that LUBA "shall adopt rules governing"

---

[6] The court in *Miller* did not consider whether LUBA erred in not transferring the case to the circuit court because the petitioner had not filed a motion to transfer. 113 Or App at 305. Here, petitioner did file a motion to transfer, but not until *after* LUBA had dismissed the appeal.

the conduct of review proceedings brought before it. ORS 34.102 requires the transfer of a "notice of intent to appeal" filed with LUBA. Implicit in that requirement is the assumption that the appealing party intends to pursue the matter if LUBA lacks jurisdiction. The requirement imposed by OAR 661-010-0075(11) that a party file a motion to transfer the matter within 14 days of LUBA having raised the issue of jurisdiction is consistent with that implicit assumption and ensures that, in the event LUBA dismisses the appeal for lack of jurisdiction, the party intends to continue to pursue the matter in the circuit court.[7] The appealing party's burden to make a motion to LUBA to transfer the matter is not an onerous one, especially in light of OAR 661-010-0005, and the board's interpretation that the two rules together permit untimely motions, as long as the appeal is still pending before LUBA and there is no substantial prejudice. Further, it is the policy of the legislature that "time is of the essence in reaching final decisions involving land use." ORS 197.805.[8] LUBA, like this court, is charged with the responsibility to process cases expeditiously. *See, e.g.*, ORS 197.840. Especially given that policy, we conclude that OAR 661-010-0075(11) is not inconsistent with ORS 34.102(4) and is within LUBA's authority to adopt administrative rules.[9]

Petitioner contends, in the alternative, that LUBA did not "raise" a jurisdictional issue on its own motion by discussing the issue and asking for briefing at oral argument. In petitioner's view, in order to trigger the 14-day time limit of OAR 661-010-0075(11)(b), LUBA must raise a jurisdictional issue in writing or at least orally frame its inquiry as a "motion." Accordingly, petitioner contends, the 14 days provided in OAR 661-010-0075(11)(b) did not begin to run until LUBA issued its jurisdictional ruling on November 14, 2011.

---

[7] One implication of petitioner's interpretation of ORS 34.102 is that every case that was incorrectly filed with LUBA would be transferred to circuit court, whether or not the party wished to pursue the matter in circuit court.

[8] Normally, LUBA must issue a final decision within 77 days. ORS 197.840(1). Review by this court is also expedited. For example, this court shall issue its decision "with the greatest possible expediency," ORS 197.850(10)—that is, generally, "within 91 days after oral argument," ORS 197.855(1)

[9] If a petitioner has any doubt regarding whether LUBA or the circuit court has jurisdiction, then the prudent practice is to file a notice of appeal with LUBA and a writ of review with the circuit court.

LUBA is entitled to deference in the interpretation of its own administrative rule if its interpretation is plausible and not inconsistent with the rule, the rule's context, or any other source of law. *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994). LUBA's conclusion that it raised the jurisdictional issue on its own motion at oral argument and that, pursuant to OAR 661-010-0075(11)(b), petitioner was required to file a request to transfer within 14 days of that date is plausible and is not inconsistent with the rule or the rule's context or any other source of law.

Petitioner contends that OAR 661-010-0075(11)(a), which provides that a party has the opportunity to request that an appeal be transferred "in the event" that LUBA determines that the appealed decision is not reviewable as a land use decision, suggests that a request for transfer is not entertained until LUBA actually determines that it does not have jurisdiction. That did not occur, in petitioner's view, until LUBA issued its order on November 14, 2011. That is a plausible interpretation of the rule; however, it is not the only plausible interpretation. LUBA's conclusion that under OAR 661-010-0075(11)(b) petitioner was required, after it learned at oral argument that LUBA had raised the jurisdictional issue, to file a request to transfer in anticipation of the possibility that LUBA would conclude that it lacked jurisdiction, was also plausible.

Finally, we reject without discussion petitioner's contention that the administrative rule violates federal procedural due process principles.

Affirmed.