Argued and submitted July 27, 2011, circuit court judgments reversed, DLCD
orders reinstated September 19, 2012

Scott BERTSCH
and Patty Bertsch,
*Plaintiffs-Respondents,*

*v.*

DEPARTMENT OF LAND CONSERVATION
AND DEVELOPMENT,
a department of the State of Oregon,
*Defendant-Appellant.*

Susan WALES
and Matthew Wales,
*Plaintiffs-Respondents,*

*v.*

DEPARTMENT OF LAND CONSERVATION
AND DEVELOPMENT,
a department of the State of Oregon,
*Defendant-Appellant.*

Washington County Circuit Court
C096126CV, C096127CV;
A146115 (Control), A146117

287 P3d 1162

Stephanie L. Striffler, Senior Assistant Attorney General,
argued the cause for appellant. With her on the briefs were
John R. Kroger, Attorney General, and Mary H. Williams,
Solicitor General.

John M. Junkin argued the cause for respondents. With him on the brief were Jennifer Bragar and Garvey Schubert Barer.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

The Department of Land Conservation and Development (DLCD) appeals judgments of the circuit court on judicial review of two DLCD orders, issued pursuant to section 5 of Ballot Measure 49 (2007), determining that land zoned for exclusive farm use (EFU) owned by petitioners Wales and land zoned for agricultural forestry use (AF) owned by petitioners Bertsch did not qualify for additional home sites under section 6 of Measure 49, because petitioners Wales and Bertsch were not each lawfully permitted to establish a home site when they acquired their properties. The circuit court held in two separate judgments that, under Measure 49, petitioners Wales and Bertsch each qualified to apply for an additional home site. DLCD's appeals have been consolidated on DLCD's motion. We conclude that the court erred in determining that petitioners were entitled to relief and, therefore, reverse the judgments and reinstate DLCD's orders.

Section 6(6)(f) of Measure 49 provides for "just compensation" in the form of up to three home site authorizations if the claimant demonstrates that, "[o]n the claimant's acquisition date, the claimant lawfully was permitted to establish at least [that] number of lots, parcels or dwellings on the property." The Washington County ordinance in effect when petitioners Bertsch and Wales acquired their properties in 1987 and 1991, respectively, limited residential dwellings on property zoned EFU and Agricultural Forestry (20-acre minimum) (AF-20). Under some circumstances, the county permitted farm-related dwellings on lots smaller than 20 acres. The issue in dispute on appeal concerns whether, despite the conditional nature of the county's approval process for farm-related dwellings on parcels smaller than 20 acres, DLCD was nonetheless required to approve the dwellings under Measure 49.

We recently addressed the statutory context for this dispute in *Ericsson v. DLCD*, 251 Or App 610, 285 P3d 722 (2012), and we will not repeat it here. As in *Ericsson*, the relevant provision at issue in this case is section 6(6)(f) of Measure 49. A claimant property owner may qualify for approval of up to three home sites under section 6 of

Measure 49 if the claimant timely filed a claim under Measure 37 and satisfied the substantive criteria of section 6(6) of Measure 49, which includes the requirement that, "[o]n the claimant's acquisition date, the claimant lawfully was permitted to establish at least the number of lots, parcels or dwellings on the property that are authorized under [section 6]." Measure 49, § 6(6)(f). As in *Ericsson*, the dispute in this case concerns whether petitioners satisfied that requirement.

We address the circumstances of each petitioner's claim, based on the circuit court's findings, the parties' stipulations, and the administrative record. On September 9, 1987, the Bertsches acquired a 3.17-acre parcel in unincorporated Washington County. At the time they acquired the property, it was, and currently is, zoned EFU. The Waleses acquired their 7.28-acre parcel, which consists of two legal lots, on June 4, 1991. The property was and currently is zoned AF-20. At the time of acquisition, the minimum lot size for both EFU and AF-20 zoning was 20 acres. However, also at that time, the Washington County Community Development Code (CDC) allowed, as a permitted use on lots less than 20 acres, a "dwelling unit in conjunction with farm use," subject to the conditions set forth in CDC section 430-37.2A. The relevant portion of the applicable versions of that code section provided that, in the applicable zone, a dwelling may be approved upon a finding that the property "is planted in perennials capable of producing upon harvest, an average of at least $10,000 in gross annual income." CDC § 430-37.2A.

In order to determine whether the property was capable of producing an average annual income of $10,000, the county applied standards contained in Resolution and Order 86-30, which included the requirement that the applicant submit a dwelling request with a farm management plan. The plan would be reviewed for, among other criteria, water rights and irrigation and potential compatibility with soils, slope, and time of planting. If the applicant's farm plan complied with the standards in Resolution and Order 86-30, the county would approve the requested farm dwelling, conditioned upon implementation of the farm plan. Before issuance of the building permit for a farm dwelling, the farm

plan must have been implemented—including the planting of perennials—and the farm property reviewed by county staff for compliance. Applicants had two years from the date of approval of the farm dwelling to comply with the farm plan and obtain a building permit for the farm dwelling. If the applicant's property was actually planted in perennials capable of generating a gross income of $10,000, the county would issue a building permit to construct the residential dwelling. Those were the requirements in 1987 and in 1991, when Bertsches and Waleses, respectively, acquired their properties.

The law changed in 1993 in a manner that no longer permitted petitioners to apply for approval of a farm-related dwelling on their properties. In that year, the county amended CDC section 430-37.2A by further restricting development of a farm-related dwelling on high value farm land.

In 2006, the Bertsches and Waleses filed Measure 37 claims with Washington County and DLCD. Each of the petitioners obtained waivers of the post-acquisition portions of state laws and the Washington County code provisions that would have prevented them from applying for a farm-related dwelling. After the passage of Measure 49, petitioners submitted election forms with DLCD under Measure 49, section 6, seeking supplemental review of their Measure 37 claims and a determination whether they qualified for one home site approval on each parcel.[1] Petitioners did not submit any evidence either that their properties had been planted with perennials capable of generating $10,000 in gross income or that farm plans had been developed.

In separate orders rejecting both petitioners' requests, DLCD reasoned:

"[T]here is no evidence in the record to establish that between the time the claimants acquired the property * * * and the time the more restrictive regulations became effective in 1993, the property * * * [was] 'planted in perennials capable of producing upon harvest, an average of at least $10,000 in gross annual income[.]'"

---

[1] The Bertsches sought one home site and the Waleses sought a home site on each of the two parcels.

Petitioners each sought judicial review in Washington County Circuit Court. The circuit court determined that petitioners were entitled to seek development of the additional home sites under the conditions applicable at the time of acquisition. The judgments required that "[p]etitioners must obtain permits and approvals to develop a single detached farm related dwelling on each Tax lot from Washington County Department of Land Use and Transportation for the development of a farm related dwelling pursuant to the version of Washington County ('CDC') section 430-37.2A(1)(b) in effect on June 4, 1991."

DLCD appeals the circuit court judgments, asserting that, in determining that petitioners were entitled to relief, the circuit court misinterpreted Measure 49. On appeal, this court reviews the circuit court's judgments to determine whether they correctly assessed DLCD's decision under the standards of ORS 183.484(5). As a practical matter, that means that we review DLCD's orders directly, under the standards of ORS 183.484(5), for substantial evidence and errors of law. *G.A.S.P. v. Environmental Quality Commission*, 198 Or App 182, 187, 108 P3d 95, *rev den*, 339 Or 230 (2005).

As noted, under section 6(6)(f) of Measure 49, a claimant may qualify for "just compensation" in the form of approval by DLCD of up to three home sites, if the claimant shows that, at the time of acquisition, he or she "lawfully was permitted to establish" the number of dwellings sought as just compensation. There is no dispute that before the change to the law in 1993, under the zoning applicable at the time of acquisition, petitioners could have sought authorization for additional dwellings on their properties pursuant to CDC section 430-37.2A. However, petitioners had not sought that authorization or attempted to meet the qualifications for authorization for additional dwellings pursuant to then-existing requirements. As DLCD found, there is no evidence that petitioners' properties were then actually planted with perennials capable of generating an average of $10,000 in gross income per year during the time when the county could have issued building permits for property less than 20 acres.

The outcome of this case depends on the meaning of section 6(6)(f) as applied to the facts of this case and specifically whether, at the time of acquisition, petitioners "lawfully [were] permitted to establish" the number of dwellings they seek. Our task is to determine the voters' intent in adopting the measure, which we glean from the text, context, and legislative history of the measure, resorting if necessary to maxims of statutory construction. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). As previously noted, section 6(6)(f) provides:

> "To qualify for a home site approval under this section, * * * the claimant must establish that:
>
> "* * * * *
>
> "(f) On the claimant's acquisition date, the claimant lawfully was permitted to establish at least the number of lots, parcels or dwellings on the property that are authorized under this section."

(Emphasis added.) The circuit court held that (1) section 6(6)(f) permitted petitioners to obtain relief by showing that, under the law at the time of acquisition, petitioners could have established entitlement to a dwelling on less than 20 acres by satisfying certain conditions and (2) petitioners are entitled to attempt to satisfy the conditions for establishing a dwelling that were in place before the law changed in 1993. As viewed by petitioners, those conclusions are correct because, on the date they acquired the property and before the change in the law, petitioners were permitted to pursue a process for establishing the additional lots they seek. It is that process, they contend, that they should now be entitled to pursue. Reduced to its essence, petitioners' argument is that, under Measure 49, DLCD is authorized to provide "just compensation" in the form of a waiver of post-acquisition land use regulations and to issue a home site approval that is contingent on satisfaction of historical conditions in existence at the time petitioners acquired their properties.

As the state reads the italicized text, section 6(6)(f) requires a determination as to whether, when each petitioner acquired the property and before the change in the law, petitioners already met the conditions to have the dwelling they now seek to develop under Measure 49. In light of

CDC section 430-37.2A and the record in this case, the state contends, the answer is clearly "no." A property owner could not obtain a building permit unless the owner had satisfied the conditions set out in CDC section 430-37.2A, and there is no evidence that those conditions had been satisfied in this case.

We recently addressed this same statutory text in *Ericsson*. One of the questions presented in that case was similar to the issue here. There, the petitioners asserted that, at the time they acquired their properties, there were processes available (including a change in zoning and the opportunity to provide "compelling evidence" that certain standards were met) that would have permitted the Ericssons to establish lots and dwellings on their properties, as well as evidence that the county would have granted permission for the development. The state countered that, in order to show that the Ericssons were lawfully permitted to establish lots and dwellings, the petitioners had to show that, "at the time the claimant acquired the property, the claimant was actually permitted to establish the use, based on then-existing standards applied to the condition of the property as it existed when the prior law was in effect." 251 Or App at 619. It was not sufficient, the state contended, that the property might have been developed under the law or if the law or conditions changed. The state asserted that the petitioners had to show that the homesite uses would have been allowed at the time the property was acquired or whether prior law was in effect. We agreed with the state's position. We held that,

> "in order to prove that a claimant 'lawfully was permitted' to establish dwellings or lots under section 6(6)(f), a claimant must prove by evidence in the DLCD administrative record that it is more likely than not that the claimant would have been actually permitted to establish the use, based on the application of prior law, *i.e.*, the local and state land use regulations in effect at the time of acquisition, *to the condition of the property as it existed when the prior law was in effect.* We need not decide, given the facts of this case, whether the relevant condition of the property is only the condition on the acquisition date or the condition anytime after that date and before any relevant change to the prior

law. Thus, DLCD did not err in failing to grant homesite approvals to petitioners based upon a mere possibility that the dwellings could have been allowed under the prior law."

*Ericsson*, 251 Or App at 625 (emphasis added). Congruently with our holding in *Ericsson*, we conclude here that, when the law in effect at the time of acquisition required local government approval of owner-implemented requirements as a condition to county approval of a dwelling, in order to be entitled to just compensation under section 6(6) of Measure 49, the owner must establish that, more likely than not, those conditions were satisfied at the time when the county could authorize the dwelling.[2] That conclusion follows from the text of section 6(6), in light of its context.

Section 6(6)(f) of Measure 49 requires the claimant to show that the claimant "lawfully was permitted to establish" a dwelling under the law in effect at acquisition. As interpreted by the circuit court and petitioners, a person was permitted to establish a dwelling if the law permitted the person to satisfy conditions necessary for authorization of construction. Under the state's interpretation, section 6(6)(f) requires the claimant to show not merely that the building of a dwelling was a permitted use under the zoning that could be established through the satisfaction of conditions, but that the claimant actually had satisfied the conditions that were necessary for authorization of the construction of the dwelling.

Dictionary definitions of the disputed terms are not particularly elucidating in resolving this difference. *See Ericsson*, 251 Or App at 621-23 (discussing dictionary definitions); nor is the legislative history. We think that the phrase "lawfully was permitted to establish," in isolation, is logically susceptible to the interpretation that petitioners and the circuit court have given it: If, under the zoning of

---

[2] Like in *Ericsson*, we need not decide "whether the relevant condition of the property is only the condition on the acquisition date or the condition anytime after that date and before any relevant change to the prior law." 251 Or App at 625. For reasons we will later discuss, 252 Or App at 329-30, that issue is academic in this case: petitioners submitted no evidence concerning a farm management plan or their ability to meet the requirements of such a plan at *any* date before the more restrictive statutes and regulations were imposed in 1993.

the property at time of acquisition, a person could have obtained authorization for the construction of a dwelling at some future time by satisfying certain conditions, then the person was lawfully permitted to establish the dwelling.

The state contends, nonetheless, that, if one reviews the context of the measure, "just compensation," as contemplated by Measure 49, is the approval of a dwelling by DLCD, not the granting of an opportunity to fulfill conditions that were necessary for local government authorization of a dwelling at the time of acquisition. The state's argument is, essentially, that under Measure 49, unlike under Measure 37, a waiver of land use restrictions is not a form of "just compensation"; the only "just compensation" authorized by section 6(6) of Measure 49 is the approval of a home site, and the only means of establishing entitlement to just compensation is by showing that, at the time of acquisition or before the change in the law, the owner actually met the conditions for construction of a dwelling. In this case, the state contends, because petitioners had not satisfied the conditions for authorization of a dwelling at the time that the county had authority to authorize a dwelling, the law did not permit DLCD to approve a home site as just compensation.

The state's interpretation bears serious consideration. As this court has said, the electors' intention in enacting Measure 49 was to supersede Measure 37. *See Pete's Mountain Homeowners Assn. v. Clackamas Cty.*, 227 Or App 140, 151, 204 P3d 802, *rev den*, 346 Or 589 (2009) (Measure 49 abrogates the continued application of the "goal-post" statute, ORS 215.427(3)(a), to development allowed by Measure 37 waiver). In *Corey v. DLCD*, 344 Or 457, 465, 184 P3d 1109 (2008), the Supreme Court concluded that "[a]n examination of the text and context of Measure 49 conveys a clear intent to extinguish and replace the benefits and procedures that Measure 37 granted to landowners." According to the Supreme Court, "Measure 49 by its terms deprives Measure 37 waivers—and *all* orders disposing of Measure 37 claims—of any continuing viability," subject to the narrow exception for so-called vested rights. *Id.* at 466-67 (emphasis in original). As the state points out, under Measure 49, apart from local government involvement in

the implementation of the approval and authorization of a dwelling, only DLCD, and not the local government, grants or denies the claim to build additional dwellings,[3] and the order approving the claim must state the number of home site approvals that are issued for the property. Measure 49, § 8(7). Although the measure requires local involvement for certain purposes, *see, e.g.*, Measure 49, § 6(8); OAR 660-041-0010(16),[4] the local government does not ultimately determine whether a claim for additional dwellings is granted; only DLCD has that authority. The local government lacks authority to apply its standards in a manner that has the effect of prohibiting the establishment of the dwelling. Measure 49, §§ 11(1), 6(8).[5]

We agree with the state that the county's role under Measure 49 is limited to applying current law in implementing the approvals authorized by DLCD and

---

[3] As explained by Lane Shetterly, then director of DLCD:

"The counties would be relieved of their obligation to process duplicate claims. Essentially what we have now is where you have one property located in a rural area, a property owner is required to file a claim on the same property with both the state and also with the county. The legislation as proposed would consolidate the claim process with the state, thereby relieving the counties of that claim processing function and also simplifying then the filing by claimant[s] so that there is only one filing."

Joint Special Committee on Land Use Fairness, Apr 12, 2007, http://www.leg.state.or.us.listn.

[4] OAR 660-041-0010(16) provides that a "Measure 49 Authorization" is "a final order and authorization issued by the department under Measure 49 that authorizes a claimant to seek local approval of one or more home sites."

[5] Section 6(8) of Measure 49 provides:

"[I]f [DLCD] has issued a final order with a specific number of home site approvals for a property under this section, the claimant may seek other governmental authorizations required by law for the partition or subdivision of the property or for the development of any dwelling authorized, and a land use regulation enacted by the state or county that has the effect of prohibiting the partition or subdivision, or the dwelling, does not apply to the review of those authorizations."

Section 11(1) of Measure 49 provides:

"A subdivision or partition of property or the establishment of a dwelling on property, authorized under [Measure 49] must comply with all applicable standards governing the siting or development of the dwelling, lot or parcel including, but limited to, the location, design, construction or size of the dwelling, lot or parcel. However, the standards must not be applied in a manner that has the effect of prohibiting the establishment of the dwelling, lot or parcel authorized under [Measure 49] unless the standards are reasonably necessary to avoid or abate a nuisance, to protect public health or safety or to carry out federal law."

that there is no provision in the measure for application of historic conditions to approvals under Measure 49. Measure 49, section 11(1) provides that "[a] subdivision or partition of property or the establishment of a dwelling on property, authorized under [Measure 49] must comply with all applicable standards governing the siting or development of the dwelling." We conclude that "all applicable standards" are those standards that *currently* apply to the establishment of a dwelling, not historical standards. We further conclude that, when the law at the time of acquisition required local government approval of owner-implemented requirements as a prerequisite to county approval of a dwelling, in order to be entitled to just compensation under section 6(6) of Measure 49, the owner must establish that, more likely than not, those prerequisites were satisfied at the time when the county had authority to authorize the dwelling. *See Ericsson,* 251 Or App at 625-26. Although DLCD has authority to issue an approval that contains terms that are necessary to ensure that the use of the property is lawful, *see* Measure 49, section 8(7), DLCD does not have authority under Measure 49 to grant the type of contingent approval of a home site that the circuit court granted in this case, under which the actual home site approval is dependent on the owner's future satisfaction of historic contingencies and local government approval that applied to petitioners' properties at the time of acquisition or before the change in the law.

The trial court therefore erred in holding that, under section 6(6)(f) of Measure 49, petitioners were currently entitled to attempt to satisfy the historical conditions for establishing a farm or forestry dwelling. It would not have been sufficient for petitioners to present evidence that it was more likely than not that they *could* have met the historical conditions for approval of an additional dwelling. Petitioners needed to establish that, more likely than not, the property actually complied with the owner-implemented requirements of a farm management plan at the time of acquisition or prior to the changes in the statutes and regulations in 1993. Petitioners submitted no evidence concerning a farm management plan or their ability to meet the requirements of such a plan.

Circuit court judgments reversed; DLCD orders reinstated.