Argued and submitted February 25, reversed and remanded
September 21, 2022

# FERN HOLLOW FARMS, INC.,
*Plaintiff-Appellant,*

*v.*

# LINN COUNTY,
*Defendant-Respondent,*
*and*

# L&O FARMS, LLC;
Brad Silbernagel; and Lisa Silbernagel,
*Intervenors Defendants-Respondents.*

Linn County Circuit Court
20CV17708; A175675

518 P3d 142

Plaintiff, Fern Hollow Farms, Inc., owns property for which, pursuant to Ballot Measure 49 (2007), the Department of Land Conservation and Development (DLCD) granted three "home site approvals," Measure 49, section 6(1), in a final order issued in 2010. In 2019, plaintiff applied to Linn County to develop its property pursuant to that final order, and the county denied the applications, reasoning that the final order, which we refer to as the Measure 49 authorization, does not entitle plaintiff to partition its property or engage in any other development. That is so, the county concluded, because two provisions of the Linn County Code require a piece of property to be a lawfully created unit of land in order for the county to approve development on the property, and the subject property is not, and, when plaintiff's predecessors in interest applied for the Measure 49 authorization, was not, a lawfully created unit of land. Plaintiff challenged the county's denials in a writ-of-review proceeding in circuit court, and the circuit court agreed with the county. Plaintiff appeals. *Held*: Measure 49 contemplates two phases of implementation. In the first phase, DLCD, with notice to and the opportunity for input from the county and others, determined that plaintiff's predecessors in interest were entitled to "home site approvals" under Measure 49. That process included a determination that, "[o]n the claimant's acquisition date, the claimant lawfully was permitted to establish at least the number of lots, parcels or dwellings on the property that are authorized under this section." Measure 49, § 6(6)(f). DLCD's order was subject to judicial review, but it was not challenged by the county, or anyone else, and it became final. Now, in the second phase, plaintiff has applied to the county for approval to develop the property consistently with the home site approvals in the Measure 49 authorization. In this phase, plaintiff is not required to show, and the county could not consider, whether plaintiff's predecessors in interest had satisfied the regulations that were in effect on their acquisition date. That determination was made, and became final, in the first phase, and it is not at issue in the second phase.

Reversed and remanded.

Thomas McHill, Judge.

Bill Kloos argued the cause for appellant. Also on the briefs were Aaron J. Noteboom and Noteboom Law LLC.

Donald M. Kelley argued the cause for respondents L&O Farms, LLC, Brad Silbernagel, and Lisa Silbernagel. Also on the brief was Kelley & Kelley.

Kevan J. McCulloch waived appearance for respondent Linn County.

Before James, Presiding Judge, and Lagesen, Chief Judge, and Joyce, Judge.

JAMES, P. J.

Reversed and remanded.

**JAMES, P. J.**

Plaintiff, Fern Hollow Farms, Inc., owns property for which, pursuant to Ballot Measure 49 (2007), the Department of Land Conservation and Development (DLCD) granted three "home site approvals," Measure 49, section 6(1), in a final order issued in 2010. In 2019, plaintiff applied to Linn County to develop its property pursuant to that final order, and the county denied the applications, reasoning that the final order, which we refer to as the Measure 49 authorization, does not entitle plaintiff to partition its property or engage in any other development. That is so, the county concluded, because two provisions of the Linn County Code (LCC) require a piece of property to be a lawfully created unit of land in order for the county to approve development on the property, and the subject property is not, and, when plaintiff's predecessors in interest applied for the Measure 49 authorization, was not, a lawfully created unit of land. Plaintiff challenged the county's denials in a writ-of-review proceeding in circuit court, and the circuit court agreed with the county.

Plaintiff appeals. As explained below, Measure 49 contemplates two phases of implementation. In the first phase, DLCD, with notice to and the opportunity for input from the county and others, determined that plaintiff's predecessors in interest were entitled to "home site approvals" under Measure 49. That process included a determination that, "[o]n the claimant's acquisition date, the claimant lawfully was permitted to establish at least the number of lots, parcels or dwellings on the property that are authorized under this section." Measure 49, § 6(6)(f).[1] DLCD's order was subject to judicial review, but it was not challenged by the county, or anyone else, and it became final. Now, in the

_____

[1] The sections of Measure 49 that pertain to claims previously filed under Ballot Measure 37 (2004)—sections 5, 6, 7, 8, 9, 10, and 11 of Measure 49—were not codified. *Friends of Yamhill County v. Board of Commissioners*, 237 Or App 149, 153 n 3, 238 P3d 1016 (2010), *aff'd*, 351 Or 219, 264 P3d 1265 (2011). Thus, we refer to them by their Measure 49 section numbers. However, other sections of Measure 49, including the definitions section (section 2 of Measure 49) and the judicial review section (section 16 of Measure 49), were codified. We refer to those sections by their current numbering, some of which has changed in ways immaterial to our analysis between 2010, when DLCD issued the final order in this case, and the present.

second phase, plaintiff has applied to the county for approval to develop the property consistently with the home site approvals in the Measure 49 authorization. In this phase, plaintiff is not required to show, and the county could not consider, whether plaintiff's predecessors in interest had satisfied the regulations that were in effect on their acquisition date. That determination was made, and became final, in the first phase, and it is not at issue in the second phase. Accordingly, we reverse and remand.

## I.   FACTS AND PROCEDURAL HISTORY

The relevant facts are undisputed. The 64.41-acre subject property is located in Linn County and owned by plaintiff. Plaintiff's predecessors in interest, the Humphreys, first acquired the property as part of a larger parcel in 1981. In 1985, the Humphreys transferred two parts of the larger parcel by executing deeds with new metes and bounds descriptions. They also deeded the subject property to themselves with a new metes and bounds description. The parties agree that, at that time, county ordinances prohibited dividing property simply by deeding part of it without also completing a land-division process. No one applied for a land division at that time.

In 2006, the Humphreys filed a claim for the subject property under Ballot Measure 37 (2004). Shortly thereafter, the voters enacted Measure 49, which "extinguished and replaced the benefits and procedures that Measure 37 granted to landowners. Instead of providing for monetary compensation or waivers authorizing any use permitted at the time property owners acquired their property, as Measure 37 did, Measure 49 provides property owners with relief in the form of home site approvals." *Papworth v. DLCD*, 255 Or App 258, 261, 296 P3d 632 (2013) (internal quotation marks, brackets, and citation omitted).

The Humphreys sought supplemental review of their Measure 37 claim under section 6 of Measure 49. In 2010, DLCD issued a "Final Order and Home Site Authorization" for the subject property. In the order, DLCD determined that the Humphreys had acquired the subject property in 1981 and that, at that time, the Humphreys "lawfully [were]

permitted to establish at least the number of lots, parcels or dwellings on the property that are authorized under" section 6 of Measure 49. Measure 49, § 6(6)(f). After determining that the Humphreys' Measure 49 claim met all of the applicable standards, DLCD ordered, "this claim is approved, and the claimants qualify for three home site approvals." No one sought review of DLCD's order, and it became final. *See* ORS 195.318 (Measure 49 authorizations are reviewed as agency orders in other than a contested case); ORS 183.484 (providing for review of agency orders in other than a contested case).

In 2014, the county planning director issued a "property status determination" that determined that the subject property and the two other properties that were created from the larger parcel by the Humphreys' 1985 deeds "together are one authorized unit of land" as defined in the county code. That is, alone, the subject property "did not meet the definition of authorized unit of land contained in the County Code." That determination was not challenged and, accordingly, became final.

In 2019, plaintiff's representative applied for "Post Measure 37/49 Land Use Review," to implement the Measure 49 authorization for the subject property. The first step of the implementation process was to partition the subject property into three lots. To effectuate that application, plaintiff's representative submitted a partition application and an easement recognition application. The county planning director denied the applications, and plaintiff appealed to the Board of County Commissioners.

The board again denied the applications. It began by considering the criteria for partitions, specifically, the criterion of LCC section 924.200 that a partition application must be to partition "an authorized unit of land," and the LCC's provision that "[t]he [Planning and Building] Department shall not accept an application for a development permit or issue a permit authorizing development on any land that is not an authorized unit of land," LCC § 921.500(A).

The board noted that the LCC defines "authorized unit of land" as a unit of land that has been lawfully created.

It reasoned, "Based on the property status determination that the subject property was not created pursuant to the lawful partitioning process in effect at the time, the subject property does not meet the definition of an authorized unit of land." Accordingly, the board denied the partition application and, for the same reason, denied the easement recognition application.

Then the board addressed the "Post Measure 37/49 Land Use Review" application. It reasoned that its determination that the subject property is not an authorized unit of land prohibited it from authorizing any development on the subject property. The board decided that it was "unable to process an application or make a determination that the proposed development complies with the provisions of the Measure 49 Order."

Plaintiff sought a writ of review in the circuit court. ORS 195.318. In a motion for summary judgment, plaintiff contended that, under a correct understanding of the operation of Measure 49, the county could not apply the "authorized unit of land" requirement to prohibit partition or further development of the subject property despite the existence of a Measure 49 authorization to do exactly that.

Defendants also filed a motion for summary judgment.[2] They defended the county's reasoning, contending that the Measure 49 authorization neither explicitly nor implicitly determined whether the subject property was a lawfully created unit of land. They pointed out that the Measure 49 authorization disclaims any determination of "the current legal status of" "lots, parcels or dwellings currently existing on the Measure 37 claim property." They also noted that both Measure 37 and Measure 49 focused on "ameliorat[ing] adverse effects of restrictive land use regulations on property owners who had acquired their property before those regulations were adopted." *Papworth*, 255 Or App at 260 (describing purpose of Measure 37); *id.* at 268 ("[T]he purpose of Measure 49 was to provide relief, albeit

---

[2] L&O Farms, LLC, and the Silbernagels intervened as defendants in the writ-of-review proceeding. Below, the county did not file separate briefs, instead, leaving it to intervenors to defend the county's position. On appeal, the county has likewise waived appearance.

not full relief, to property owners whose land use opportunities were restricted *after* they acquired their property." (Emphasis in original.)). Given that focus on restrictions imposed "*after* [the claimants] acquired their property," *id.* at 268, defendants asserted that plaintiff's Measure 49 authorization should not be understood to implicitly make the subject property into a lawful unit of land, because the prohibition on dividing land the way the Humphreys did in 1985 had been in effect in 1981, when they acquired the land.

The circuit court agreed with defendants, reasoning that "Measures 37 and 49 specifically address" only those land use laws enacted after an owner's acquisition date that restrict uses that were allowed as of the acquisition date. The court noted that both the LCC provisions that prohibit development on unlawfully created units of land and ORS 92.016 to 92.025, which are statutory provisions that provide timing requirements for the sale of lots and parcels and provide a remedy for a buyer against a seller of an unlawful unit of land, "existed when the claimants created unauthorized lots" by attempting "to divide the property by deed without complying with" the relevant laws. Given that, the court agreed with defendants that, despite the Measure 49 authorization for the property, "the Linn County Code provisions *** act as preconditions to any development which would be authorized on the subject property."[3] Accordingly, the court entered a judgment affirming the county's decision.

On appeal, the parties renew the arguments they made before the county and the circuit court: Plaintiff contends that the Measure 49 authorization authorizes

---

[3] To the extent to which the court reasoned that ORS 92.016 to 92.025, as well as the county's authorized-unit-of-land provisions, apply and prohibit the development authorized for the subject property under Measure 49, that reasoning was outside the scope of its task in the writ-of-review proceeding, because the county did not rely on those statutory provisions. *See* ORS 34.040(1) (in a writ-of-review proceeding, the circuit court's only task is to determine whether the county "(a) [e]xceeded its jurisdiction; (b) [f]ailed to follow the procedure applicable to the matter before it; (c) [m]ade a finding or order not supported by substantial evidence in the whole record; (d) [i]mproperly construed the applicable law; or (e) [r]endered a decision that is unconstitutional"). As plaintiff informed the circuit court, in "[a] writ of review ***, the County, via Intervenors, is to defend the decision the County made, not the decision it did not make or the decision the Intervenors wish the County had made."

partition and development of the subject property regardless of the authorized-unit-of-land requirements of the LCC, and defendants contend that the authorized-unit-of-land requirements prohibit partition or development of the subject property regardless of the Measure 49 authorization.

As we will explain, the text of Measure 49, viewed in context, demonstrates that plaintiff is correct that the Measure 49 authorization supersedes the authorized-unit-of-land requirements of the LCC.

"In an appeal from a writ of review where the parties' arguments raise only questions of law, as they do here, we review for legal error." *Oregon Shores v. Board of County Commissioners*, 297 Or App 269, 274, 441 P3d 647 (2019); *see* ORS 34.040(1)(d) (in a writ-of-review proceeding, the circuit court must determine, among other things, whether the county "[i]mproperly construed the applicable law"); ORS 34.100 (providing that "an appeal" may be taken from a judgment of the circuit court on a writ of review "in like manner and with like effect as from a judgment of a circuit court in an action"); *see also Friends of Yamhill County v. Board of Commissioners*, 351 Or 219, 244, 264 P3d 1265 (2011) (*Friends II*) (explaining standard of review on appeal of a writ of review from a determination under Measure 49).

## II.   THE MEASURE 49 SYSTEM

We begin with a brief overview of the operation of Measure 49.[4] The text of Measure 49 establishes two distinct phases of implementation of the statute. During the first phase, the claim phase, DLCD solicited, received, sought comments on, and processed claims. Measure 49, § 8(1)-(4), (7). A key participant in this first phase was the county. When DLCD received a claim, it had to "provide a copy of the material submitted by the claimant to the county where the property is located and consider written comments from

---

[4] All of our discussion in this opinion is regarding claims for property outside of urban growth boundaries and Measure 49 authorizations issued under section 6 in particular. *See* Measure 49, § 5 (creating three different pathways for claims (1) under sections 6 and 7 (for property outside urban growth boundaries); (2) under section 9 (for property inside urban growth boundaries); and (3) based on a Measure 37 waiver and a common-law vested right to complete and continue the use described in the waiver).

the county that are timely filed with [DLCD]."[5] Measure 49, § 8(4).

In its rule implementing that part of Measure 49, DLCD provided that it

"will mail Notice of [its] Preliminary Evaluation [of a Measure 49 claim] to the Claimant, the Claimant's authorized agent, the county with land use jurisdiction over the Measure 37 Claim Property, and to any person who is an owner of record of real property located either within 250 feet of the Measure 37 Claim Property, if the Measure 37 Claim Property is not within a farm or forest zone, or within 750 feet of the Measure 37 Claim Property if it is located in a farm or forest zone, and to any neighborhood or community organization(s) whose boundaries include any portion of the Measure 37 Claim Property or that has made a written request for a copy of the Preliminary Evaluation."

OAR 660-041-0090(3). The county, as well as the others mentioned, then have the opportunity to submit comments before DLCD issues the final Measure 49 authorization. OAR 660-041-0090(4) ("[a]ny person" may submit comments). DLCD then determined whether to issue Measure 49 authorizations. Measure 49, § 8(7). As part of that process, DLCD applied the substantive criteria for issuance of Measure 49 authorizations that are set out in section 6(6). Measure 49, § 8(4) (requiring DLCD to "ensure that the requirements of this section and section 6 *** of this 2007 Act are met"). Section 6(6) provides as follows:

"To qualify for a home site approval under this section, the claimant must have filed a [Measure 37] claim for the property with both the state and the county in which the property is located. In addition, regardless of whether a [Measure 37] waiver was issued by the state or the county

---

[5] When a claim implicated only county, not state, land use regulations, the county, rather than DLCD, processed the claim:

"If [DLCD] determines that the only land use regulations that restrict the claimant's use of the property are regulations that were enacted by the county, the department shall transfer the claim to the county where the property is located and the claim shall be processed by the county in the same manner as prescribed by this section for the processing of claims by [DLCD]. The county must consider any written comments from [DLCD] that are timely filed with the county."

Measure 49, § 8(4).

before the effective date of this 2007 Act, to qualify for a home site approval under this section the claimant must establish that:

"(a)   The claimant is an owner of the property;

"(b)   All owners of the property have consented in writing to the claim;

"(c)   The property is located entirely outside any urban growth boundary and entirely outside the boundaries of any city;

"(d)   One or more land use regulations prohibit establishing the lot, parcel or dwelling;

"(e)   The establishment of the lot, parcel or dwelling is not prohibited by a land use regulation described in ORS 197.352(3);[6] and

"(f)   On the claimant's acquisition date, the claimant lawfully was permitted to establish at least the number of lots, parcels or dwellings on the property that are authorized under this section."

Anyone adversely affected by DLCD's issuance, or denial, of a Measure 49 authorization, including a county or any person that submitted comments on a claim, had the right to seek judicial review under ORS 183.484, which provides for judicial review of orders in other than a contested case. ORS 195.318(1).[7] In the absence of challenges

---

[6] The land use regulations described in *former* ORS 197.352(3) (2007), *renumbered as* ORS 195.305 (2007), when Measure 49 was enacted were land use regulations "[r]estricting or prohibiting commonly and historically recognized as public nuisances under common law"; "[r]estricting or prohibiting activities for the protection of public health and safety"; "required to comply with federal law"; and "[r]estricting or prohibiting the use of a property for the purpose of selling pornography or performing nude dancing." Or Laws 2007, ch 424, § 4(3) (amending *former* ORS 197.352 (2005)).

[7] ORS 195.318(1) provides:

"A person that is adversely affected by a final determination of a public entity under *** sections 5 to 11, chapter 424, Oregon Laws 2007 ***, may obtain judicial review of that determination under ORS 34.010 to 34.100 [(writ-of-review proceeding)], if the determination is made by Metro, a city or a county, or under ORS 183.484 [(review of orders in other than a contested case)], if the determination is one of a state agency."

"A person is adversely affected" if the person is the claimant or "[i]s a person who timely submitted written evidence, arguments or comments to [DLCD] concerning the determination." ORS 195.318(2).

to the authorizations, or, if they were challenged, after judicial review was complete, the authorizations became final. *See* Measure 49, § 11(6)(b) ("A dwelling or other residential use of the property based on an authorization under section 6, 7 or 9 of this 2007 Act is a permitted use and may be established *** by the claimant or a subsequent owner[.]").

Once a claim is approved, a Measure 49 authorization entitles its recipients, and, within 10 years of transfer, the recipients' successors in interest, to a certain number of "[h]ome site approval[s]" for particular property. Measure 49, §§ 6, 7, 8(7). A "[h]ome site approval" is "approval of the subdivision or partition of property or approval of the establishment of a dwelling on property." ORS 195.300(12). The development rights conferred by an authorization under section 6 of Measure 49, like plaintiff's, are not subject to "a land use regulation enacted by the state or county that has the effect of prohibiting the partition or subdivision, or the dwelling." Measure 49, § 6(8); *see also* Measure 49, § 11(1) (providing a limited exception to that rule that is not relevant here).[8] Measure 49 defines "land use regulation" to include "[a] provision of a county comprehensive plan, zoning ordinance or land division ordinance that restricts the residential use of private real property." ORS 195.300(14)(d).

_____

[8] Section 6(8) of Measure 49 provides:

"Except as otherwise provided in section 11 of this 2007 Act, if [DLCD] has issued a final order with a specific number of home site approvals for a property under this section, the claimant may seek other governmental authorizations required by law for the partition or subdivision of the property or for the development of any dwelling authorized, and a land use regulation enacted by the state or county that has the effect of prohibiting the partition or subdivision, or the dwelling, does not apply to the review of those authorizations."

Section 11(1) provides:

"A subdivision or partition of property, or the establishment of a dwelling on property, authorized under sections 5 to 11 of this 2007 Act must comply with all applicable standards governing the siting or development of the dwelling, lot or parcel including, but not limited to, the location, design, construction or size of the dwelling, lot or parcel. However, the standards must not be applied in a manner that has the effect of prohibiting the establishment of the dwelling, lot or parcel authorized under sections 5 to 11 of this 2007 Act unless the standards are reasonably necessary to avoid or abate a nuisance, to protect public health or safety or to carry out federal law."

The second phase of Measure 49 implementation, which we will call the development phase, begins after a Measure 49 authorization becomes final. In the second phase, holders of Measure 49 authorizations apply to local governments for authorization (in the form of the necessary permits or approvals, for example) to actually undertake the development allowed by their Measure 49 authorizations. Measure 49, § 6(8) ("[I]f [DLCD] has issued a final order with a specific number of home site approvals for a property under this section, the claimant may seek other governmental authorizations required by law for the partition or subdivision of the property or for the development of any dwelling authorized [in the final order.]"); Measure 49, § 11(3)(a) ("A city or county may approve the creation of a lot or parcel to contain a dwelling authorized under sections 5 to 11 of this 2007 Act."); Measure 49, § 11(6)(b) ("A dwelling or other residential use of the property based on an authorization under section 6, 7 or 9 of this 2007 Act is a permitted use and may be established * * * by the claimant or a subsequent owner[.]").

Measure 49 provides criteria—for example, criteria for grouping homesites and lot-size restrictions—that local governments must apply in the development phase to ensure that the home site approvals awarded in the claim phase—in the Measure 49 authorization—are developed in accordance with Measure 49's requirements. Measure 49, § 11; *see also Maguire v. Clackamas County*, 250 Or App 146, 149, 279 P3d 314 (2012) ("Section 11 of Measure 49 provides development standards for local governments to apply when considering whether to approve a partition or subdivision under Measure 49."). Measure 49 also requires that, in the development phase, local governments require the development allowed under Measure 49 authorizations to "comply with all applicable standards governing the siting or development of" the parcels or lots and dwellings, except that "the standards must not be applied in a manner that has the effect of prohibiting the establishment of the" development allowed in the Measure 49 authorization "unless the standards are reasonably necessary to avoid or abate a nuisance, to protect public health or safety or to carry out federal law." Measure 49, § 11(1); *see also Lenn v.*

*Lane County*, 285 Or App 520, 526, 397 P3d 543 (2017) ("When DLCD approves an additional dwelling under Measure 49, a local government lacks authority to apply its standards in a manner that has the effect of prohibiting the establishment of the dwelling, in the absence of one of the described exceptions."). And, in the development phase, Measure 49 provides that the local government cannot apply *any* land use regulation—not just those that were in effect when the claimant acquired their property—that has the effect of prohibiting the development awarded in the claim phase. Measure 49, § 6(8).[9]

DLCD's rules make clear the county's task in the second phase:

"The county with land use jurisdiction over the Measure 37 Claim Property *must* approve an application for a county permit submitted as provided in OAR 660-041-0090(8),[10] based on current local standards, if the county finds that:

"(a)   the approval of the proposed lots, parcels or dwellings is not prohibited by one or more current local siting or development standard(s) that the county finds are reasonably necessary in order to avoid or abate a nuisance, to protect public health or safety, or to carry out federal law; and

"(b)   the owner has not received county permits for more than a total of 20 home site approvals statewide pursuant to Measure 49 Authorizations."

OAR 660-041-0180(1) (emphasis added).[11]

---

[9]   Again, section 6(8) is subject to an exception for the standards noted in section 11(1)—those "reasonably necessary to avoid or abate a nuisance, to protect public health or safety or to carry out federal law."

[10]   OAR 660-041-0090(8) provides as follows:

"Following issuance of the Final Decision [(that is, the Measure 49 authorization)], the owner of the Measure 37 Claim Property may file an application with the county with land use jurisdiction over the Measure 37 Claim Property for a permit to establish home sites authorized or to establish an authorized dwelling[.]"

[11]   That rule also requires counties to apply certain criteria from section 11 of Measure 49 itself. OAR 660-041-0180(2) (providing additional criteria for property "zoned for farm, forest or mixed farm and forest use"); OAR 660-041-0180(3) (criteria for clustering multiple lots, parcels or dwellings).

### III.   APPLICATION

With that overview in mind, we turn now to the reasoning of the parties and the circuit court. At its core, the circuit court's reasoning was that, regardless of the text of Measure 49 set out above, that text does not sufficiently account for the statutory goal of providing relief "to property owners whose land use opportunities were restricted *after* they acquired their property." *Papworth*, 255 Or App at 268 (emphasis in original). That is, the court reasoned, and, on appeal, defendants argue that, regardless of its text, Measure 49 was intended to waive application of only state and local land use regulations that were enacted *after* claimants acquired their property. Consequently, in their view, a Measure 49 authorization cannot supersede the authorized-unit-of-land requirements of the LCC, because some version of the authorized-unit-of-land requirement was in existence in 1981, when the Humphreys acquired the property.

That reasoning runs into problems with the text of Measure 49. Defendants have not advanced any argument that the authorized-unit-of-land provisions of the LCC are not land use regulations enacted by the county, and it appears to us that they are. And by its plain terms, Measure 49 prohibits application in the second phase of "land use regulation[s] enacted by the *** county" that, if they are applied, "have the effect of prohibiting" the partition and establishment of dwellings allowed by the Measure 49 authorization.

The trial court also relied, and defendants rely on appeal, on *Papworth* and *Bertsch v. DLCD*, 252 Or App 319, 287 P3d 1162 (2012), for the proposition that Measure 49 does not exempt claimants from requirements in effect on the claimants' acquisition date, like the county's land-division requirements. *See Papworth*, 255 Or App at 267 ("[A] claimant is not entitled to relief from land use restrictions that were in effect on [their acquisition] date[.]"); *Bertsch*, 252 Or App at 327 ("[W]hen the law in effect at the time of acquisition required local government approval of owner-implemented requirements as a condition to county approval of a dwelling, in order to be entitled to just compensation

under section 6(6) of Measure 49, the owner must establish that, more likely than not, those conditions were satisfied at the time when the county could authorize the dwelling."). As a consequence, they argue, under a correct view of the substantive requirements of section 6, the Humphreys were "eligible for no home sites" pursuant to their Measure 49 claims.

However, defendants fail to place those cases within the context of the Measure 49 system in which they arose. *Papworth* and *Bertsch* were decided in the first phase— on review of DLCD's Measure 49 authorizations. That is, the Measure 49 authorizations in those cases had not yet become final. *Papworth*, 255 Or App at 260; *Bertsch*, 252 Or App at 321. In those cases, we considered whether DLCD had correctly applied the requirement that, "[o]n the claimant's acquisition date, the claimant lawfully was permitted to establish at least the number of lots, parcels or dwellings on the property that are authorized under this section." Measure 49, § 6(6)(f). We concluded that, to meet that requirement, the claimants in those cases were required to show that they had satisfied the regulations that were in effect on their respective acquisition dates. *Papworth*, 255 Or App at 266; *Bertsch*, 252 Or App at 330.

In this case, in the first phase, the Humphreys bore the burden of demonstrating to DLCD, among other things, that, "[o]n [their] acquisition date, the [Humphreys] lawfully [were] permitted to establish" the lots, parcels, or dwellings that the Humphreys had applied for. Measure 49, § 6(6)(f). DLCD concluded that they had done that. Review of DLCD's order was available to the county, but, in this case, unlike in *Papworth* and *Bertsch*, no one sought review. As a result, the Measure 49 authorization in this case, which embodies DLCD's determination that the Humphreys' claim satisfied section 6(6), became final.

The Humphreys' eligibility for home site approvals— which was finally decided in the first phase, resulting in Measure 49 authorizations—cannot be relitigated in the second phase. The question before the county in the second phase is whether the "development standards for local

governments to apply when considering whether to approve a partition or subdivision under Measure 49," set out in section 11 of Measure 49, are satisfied. *Maguire*, 250 Or App at 149; *see also* OAR 660-041-0180 (describing the permissible criteria for the county's decision). The county must also apply "all applicable standards governing the siting or development of the dwelling, lot or parcel including, but not limited to, the location, design, construction or size of the dwelling, lot or parcel," to the extent that they do not have "the effect of prohibiting the establishment of the dwelling, lot or parcel authorized under sections 5 to 11 of this 2007 Act" (unless the standards are reasonably necessary to avoid or abate a nuisance, to protect public health or safety or to carry out federal law). Measure 49, § 11(1); *see also* OAR 660-041-0180(1). And, because we are in the second phase, under section 6(8), "a land use regulation enacted by the state or county that has the effect of prohibiting the partition or subdivision, or the dwelling, does not apply to the review of" plaintiff's applications (unless one of the exceptions stated in section 11(1) applies).

Thus, in this case—when plaintiff submitted its applications to the county—unlike in *Papworth* and *Bertsch*, plaintiff was not required to show, and the county could not consider, whether the Humphreys had satisfied the regulations that were in effect on their acquisition date. That determination was made, and became final, in the first phase, and it is not at issue in the second phase.

The county and the circuit court also reasoned, and, on appeal, defendants also contend, that Measure 49 does not prevent the county from applying its authorized-unit-of-land requirements because DLCD included the following text in the Measure 49 authorization: "Statements in this final order regarding the number of lots, parcels or dwellings currently existing on the Measure 37 claim property and contiguous property are not a determination on the current legal status of those lots, parcels or dwellings." In their view, that statement specifically reserves the question of whether the subject property is an authorized unit of land. Because DLCD did not decide that question in the Measure 49 authorization, they contend, it remains to be determined at a later time.

In our view, the statement was not intended to have that effect.[12] To explain that conclusion, we first return to the text of Measure 49. Section 6(2) provides as follows:

"The number of lots, parcels or dwellings that may be approved for property under this section may not exceed the lesser of:

"(a)  The number of lots, parcels or dwellings [applied for or granted under Measure 37]; or

"(b)  Three, except that if there are existing dwellings on the property or the property contains more than one lot or parcel, the number of lots, parcels or dwellings that may be established is reduced so that the combined number of lots, parcels or dwellings, including existing lots, parcels or dwellings located on or contained within the property, does not exceed three."

That subsection imposes a cap on DLCD's ability to approve "lots, parcels or dwellings *** for property under this section." Measure 49, § 6(2). The limit is "three, for unimproved and undivided property. For improved or divided property, the allowance is reduced 'so that the combined number of lots, parcels or dwellings, including existing lots, parcels or dwellings located on or contained within the property, does not exceed three.'"[13] *McCollum v. DLCD*, 252 Or App 147, 158-59, 286 P3d 916 (2012) (quoting Measure 49, section 6(2)(b)).

In this case, the most notable thing about section 6(2)(b) is that it does not limit the number of lots, parcels, or dwellings for which the Humphreys were eligible. Here, "the property" means the property that was subject to the Humphreys' Measure 37 claim, *i.e.*, the subject property.[14]

_____

[12] DLCD is not a party to this case and has not submitted any briefing. We do not rule out the possibility that DLCD's input in a future case might change our understanding.

[13] Section 6(3) provides an exception to that upper limit that applies in limited circumstances. *See Hoekstre v. DLCD*, 249 Or App 626, 637, 278 P3d 123, *rev den*, 352 Or 377 (2012).

[14] As relevant here, Measure 49 defines "property" to mean "the private real property described in a claim and contiguous private real property that is owned by the same owner, whether or not the contiguous property is described in another claim." ORS 195.300(20). "Claim," in turn, means "a written demand for compensation filed under [Measure 37]." ORS 195.300(2). Here, no one contends that there was contiguous private real property owned by the same owner, so, for our purposes, "property" means the private real property described in the Humphreys' Measure 37 claim—the subject property.

Thus, the exception in section 6(2)(b) does not apply because its triggering condition—"there are existing dwellings on the property or the property contains more than one lot or parcel," *id.*—is not met. *McCollum*, 252 Or App at 158-59 (for unimproved and undivided property, the maximum number of homesite approvals is three). Defendants' objection is that the subject property contains *fewer than* one lot or parcel; it contains no lawfully created lot or parcel. Although that may be correct, it is immaterial for the application of the exception in section 6(2)(b); by its terms, the exception does not apply, and, consequently, "[t]he number of lots, parcels or dwellings that may be approved for property under this section may not exceed *** three." Measure 49, § 6(2)(b).

The context of the sentence on which defendants rely indicates that it is addressed to section 6(2)(b). The sentence appears at the end of the following paragraph in the Measure 49 authorization:

"The number of lots, parcels or dwellings a claimant may establish under this home site authorization is reduced by the number of lots, parcels and dwellings currently in existence on the Measure 37 claim property and contiguous property in the same ownership, regardless of whether evidence of their existence has been provided to the department. If, based on the information available to the department, the department has calculated the number of currently existing lots, parcels or dwellings to be either greater than or less than the number of lots, parcels or dwellings actually in existence on the Measure 37 claim property or contiguous property under the same ownership, then the number of additional lots, parcels or dwellings a claimant may establish pursuant to this home site authorization must be adjusted according to the methodology stated in Section 6(2)(b) and 6(3) of Measure 49. Statements in this final order regarding the number of lots, parcels or dwellings currently existing on the Measure 37 claim property and contiguous property are not a determination of the current legal status of those lots, parcels or dwellings."

We agree with defendants that the last sentence of the paragraph (along with the previous sentence) is intended to leave open for later determination—in the second phase—how many lots or parcels exist on the property. However,

contrary to defendants' argument, that sentence does not purport to reserve for determination in the second phase the essential determination of the first phase—whether the subject property qualifies for any relief under Measure 49. Rather, it reserves for the second phase only the question of how section 6(2)(b) and (3) apply to the property—whether the property is actually eligible for *all* of the home site approvals noted in the authorization, or whether the number of lots or parcels, or the number of dwellings, approved in the home site approvals must be reduced to comply with the limit of three.

Thus, in this case, on plaintiff's second-phase application to the county, which is at issue here, the Measure 49 authorization contemplated that the county could determine how many lots or parcels exist on the subject property. However, the purpose of that determination would be only to ascertain whether "the number of additional lots, parcels or dwellings a claimant may establish pursuant to this home site authorization must be adjusted according to the methodology stated in Section 6(2)(b) and 6(3) of Measure 49." That determination is irrelevant to the question to which the county applied it, namely, the predicate question of whether the Measure 49 authorization allows plaintiff to develop his property at all. Consequently, that sentence does not prevent the order from authorizing the partition and establishment of dwellings on the subject property.

Finally, we consider defendants' alternative contention that section 6(8) of Measure 49—prohibiting application of state and county land use regulations that would have the effect of prohibiting the approved development—does not apply to the county's authorized-unit-of-land provisions. That is so, they contend, because allowing development on an unlawfully created unit of land creates a nuisance as a matter of law, and land use standards that are "reasonably necessary to avoid or abate a nuisance" are exempted from section 6(8) through section 11(1). Measure 49, § 11(1) (state and local standards cannot prohibit development allowed under a Measure 49 authorization "unless the standards are reasonably necessary to avoid or abate a nuisance, to protect public health or safety or to carry out federal law"); Measure 49,

§ 6(8) (state and local land use regulations do not apply "[e]xcept as provided in section 11 of this 2007 Act").

We consider it unlikely that the voters intended "nuisance" to have a broad meaning, like the one proposed by defendants, that would undermine the operation of the statutory scheme. However, we need not decide that question here, because the nuisance issue was not raised before the county, and the county did not rule on it. In a writ-of-review proceeding, it is the circuit court's task to determine, among other things, whether the county "[m]ade a finding or order not supported by substantial evidence in the whole record" or "[i]mproperly construed the applicable law." ORS 34.040(1)(c), (d). On appeal, we evaluate whether the circuit court correctly conducted that review. *Friends II*, 351 Or at 244. Because the nuisance issue was not raised before the county, and the county did not address it, there was nothing for the circuit court to review on that issue, and, likewise, there is nothing for us to review on appeal. *See also* ORS 195.318(3)(b) ("Notwithstanding subsection (1) of this section, judicial review of a final determination under *** sections 5 to 11, chapter 424, Oregon Laws 2007 *** is *** [a]vailable only for issues that are raised before the public entity with sufficient specificity to afford the public entity an opportunity to respond.").

Reversed and remanded.